## DANCE v. McBRIDE.

1. **Seduction:** EVIDENCE: LETTER. In an action for seduction a letter purporting to have been written by defendant to the party alleged to have been seduced, but which was not addressed to her and with which she was not shown any way to have been connected, was *held* not admissible.

2. ———: ———: ———. Nor would it be competent to show that the woman had written an improper letter addressed by name to another man, in the absence of evidence showing that the defendant was in fact the party whom the letter was intended to reach.

3. ———: ———: COMPETENCY. A witness who had been himself a candidate for the woman's favor having testified that he went to her house and saw her in the company of defendant in an equivocal position, it was competent to ask him what was the purpose of his visit to the house at the time about which he testified.

4. ———: ———: MOTIVE OF WITNESS. It was also held that the same witness might be asked whether he had previously been in correspondence with the woman and also whether his letters had been answered by her.

5. **Evidence:** IMPEACHMENT OF WITNESS. A man's reputation for veracity is, not what those who deal and associate with him say about him, but what is said of him generally in the community in which he lives.

6. **Seduction:** EVIDENCE: DAMAGES. In an action by the husband for the seduction of his wife, it is competent to show that the marriage was not one of affection and has not ripened into love, and this may be considered by the jury in estimating the damages.

*Appeal from Harrison Circuit Court.*

SATURDAY, JUNE 17.

ACTION for seducing plaintiff's wife. There was a trial by jury, and judgment for plaintiff. Defendant appeals.

*Mickel & Shoemaker,* for appellant.

*Montgomery & Scott,* for appellee.

ADAMS, J.—I. A certain letter was offered in evidence and admitted against the objection of the defendant, for the purpose of showing an improper correspondence between the defendant and plaintiff's wife. The letter contains no signature, and is addressed to no one by name. Evidence was introduced tending to show, though not clearly, that it was in the defendant's hand-writing. The address is "My Dear Sweet Pet." While the letter contains no expressions which are unchaste, yet if it was written and sent by defendant to Mrs. Dance, it was an improper manifestation of affection. The plaintiff testifies that he received the letter from one Dr. Baker, of Visalia, California, where Mrs. Dance then was. There is very little in the letter which, interpreted simply in the light of the facts disclosed by the record, indicates that it was written to Mrs. Dance. A person is mentioned in it as "F. M.," and those letters are initials in plaintiff's name. Another person is mentioned by the name of Charles, and Mrs. Dance has a brother of that name. This might be considered as some evidence that it was designed for her, but there is no evidence that it was ever received by her, or if received that she approved of it.

*1. SEDUCTION: evidence: letter.*

VOL. XLIII.—40

In respect to the letter, the court instructed the jury as follows:

"The fact (if you find it to be a fact from the evidence), that the defendant wrote the first letter introduced in evidence by the plaintiff, and sent it or intended to send it to the plaintiff's wife, A. L. Dance, tends to prove an improper and illegitimate intercourse between said A. L. Dance and the defendant."

In giving this instruction we are of the opinion that the court erred. The objection to the instruction is that there is nothing in the evidence tending to connect Mrs. Dance with the letter. It is not necessary, to be sure, that it should appear that it was received by her. If it had been written in answer to an improper letter from her to him, or if she had shown in any way a desire for an improper correspondence, then, although this letter never reached her, she should be considered as a party to it. So on the other hand, although she had not invited the letter, still if she had retained it without taking any steps to express her disapproval of it, she should be considered as a party to it.

This brings us to the inquiry as to what was done in this case, and as to what should have been done, taking the facts to be as plaintiff claims them. It will be conceded that when a married woman receives an improper letter from a man, even though as in this case it contains nothing more than exaggerated expressions of affection and request for correspondence, it would be eminently proper for her to deliver the letter to her husband. The plaintiff claims that his wife received an improper letter from the defendant, and the letter is in plaintiff's possession. There is nothing in this circumstance, taken by itself, to implicate Mrs. Dance. If a man uninvited penetrates into the bed-room of his neighbor's wife with libidinous intentions, and she immediately, if there, leaves the room or calls her husband, we cannot say that she is implicated by the circumstance. It is difficult, of course, to look at the letter as written by defendant to Mrs. Dance without assuming that she had invited it, but assumption must not be substituted for proof. It may be claimed indeed that she

invited it by a letter written by her to him from Michigan. A letter was put in evidence, shown to be in her hand-writing, and if it was really written to him and received by him, both letters should be taken together as constituting an improper correspondence. This leads us to consider the admissibility of the Michigan letter.

II. This letter is signed A. L. Martin. On the inside it is addressed "My Own Dearest Darling," and on the outside 2. ——: ——: Ransom Summey. It was picked up in the street at Missouri Valley, where defendant lived. Ransom Summey is a cousin of the defendant, and was living a few miles from Missouri Valley. The defendant occasionally called for Summey's mail and took it to him. There is nothing to suggest that the defendant ever saw the letter in question, or that the same was designed for him, without assuming facts which the record does not disclose. It may be claimed that the facts testified to by one Lahman as having occurred some two years before tend to prove that defendant and Mrs. Dance committed adultery on that occasion, and that those facts should be regarded as some evidence that the letter addressed to Summey was designed for defendant. But we cannot say that if a woman commits adultery with one man, and writes an improper letter addressed to another man, there is any connection between the two facts, without something more to indicate it than the facts themselves. In admitting this letter, therefore, we think the court erred.

III. The testimony of the witness, Lahman, already referred to, was that he went to the plaintiff's house one day to 3. ——: ——: see him on business; that the front door was open; competency. that he went in without rapping or ringing the bell, or otherwise announcing himself; that he went to the door of a bed-room, which was shut, and without even rapping at that door or otherwise announcing himself, he opened it and saw the defendant standing in the room and Mrs. Dance on the bed with her person somewhat exposed. In cross-examination the defendant's counsel asked the witness what he wanted to see Mr. Dance about, to which plaintiff's counsel objected, and the court sustained the objection. This

question, we think, should have been allowed. If the purpose of the visit was really not to see Mr. Dance, but to penetrate to Mrs. Dance's bed-room, whether on a voyage of pleasure or discovery, it was proper that the jury should know it. The evidence tends to show that Lahman was an unsuccessful candidate for Mrs. Dance's favor, and this fact also, as well as his familiarity or boldness in the plaintiff's house, made him a worthy subject of cross-examination within all reasonable latitude.

IV. A day or two after the occurrence which Lahman witnessed in Mrs. Dance's bed-room, he walked with her on one of the streets of Missouri Valley and made the occurrence a subject of conversation with her. The plaintiff's counsel asked him to relate the conversation to the jury. The defendant's counsel objected, on the ground that her statements about the occurrence made a day or two afterwards could not be admitted to characterize it as a part of the *res gestae*, and that otherwise the evidence was hearsay. The court overruled the objection, and allowed the witness to relate the conversation. What the record shows of it is brief and apparently fragmentary. It does not amount to much. The substance of it is, so far as Mrs. Dance said anything, that she could not afford to break with the defendant because a certain woman was trying to get her out of the church choir, and defendant had influence enough to keep her in. We infer that the witness was advising her to break with him. The connection between this and the occurence is not fully disclosed, but the witness says that he referred to it. We are not certain that the defendant was prejudiced by the testimony. If this were all the error complained of, we might not regard the case reversible upon this ground, but we must hold that the testimony was improperly admitted.

V. Lahman was asked on cross-examination if he did not write to Mrs. Dance while she was in Michigan in the fall of 4. ——: ——: 1873. The plaintiff's counsel objected to the question, and the court sustained the objection. We think the question should have been allowed. The bed-room occurrence was in the fall of 1872. If the next fall he was

motive of
witness.

Dance v. McBride.

writing her letters of either love or friendship, it would tend to show that the interpretation put by him upon the bed-room occurrence was not at that time such as to impair his admiration for her. Again, it was proper to show upon cross-examination of the witness whether Mrs. Dance answered his letters that the jury might judge, in case she did not, whether he was testifying under any bias or ill-feeling, either towards her or towards the defendant who is supposed to have participated more largely in her favoritism.

VI. The defendant introduced several witnesses upon the trial to impeach the reputation of Lahman for truth and verac-

5. EVIDENCE: impeachment of witness.

ity. The court instructed the witnesses, before they were allowed to testify, that a man's reputation for truth and veracity is what the persons who deal and associate with him say about him. This definition, we think, is not broad enough. A man's reputation for veracity is what is said of him in the community in which he lives. Those who deal and associate with him may say nothing about his veracity, while the remainder of the community may regard and speak of him as a notorious liar.

VII. The defendant offered evidence tending to show that the plaintiff and his wife had never seen each other until he

6. SEDUCTION: evidence: damages.

visited her for the purpose of marying her, having previously made an offer of marriage by letter. This evidence the court excluded. While the evidence could not be regarded as having much weight, we are of the opinion that it should have been admitted. It tended to show that the marriage in its inception was not one of affection. The acts complained of occurred within eighteen months from the time the marriage took place. The inauspicious way in which it was contracted, as well as any fact tending to prove that no love ripened between the parties, were proper facts to be considered by the jury in the assessment of damages.

REVERSED.