## THE STATE v. KARVER.

1. **Bastardy**: UNCHASTE CONDUCT AND MOTIVE OF COMPLAINANT: EVIDENCE. In a bastardy proceeding, especially where the complainant claims to have been ravished, where the only question is that of paternity, and the circumstances are such as not to preclude the possibility that one other than the defendant may be the father of the child, it is proper to show the unchaste conduct of the woman with such other person, and that, on account of such conduct, trouble arose between her and the family of defendant, thus showing a motive on her part for falsely charging the defendant; and the questions asked defendant as a witness in this case (see opinion) should, accordingly, have been allowed.

*Appeal from Des Moines District Court.*

FRIDAY, OCTOBER 24.

THE action was brought to charge the defendant with the support of a bastard child. There was a verdict of guilty, and judgment was rendered against him accordingly. He appeals.

*Dodge & Dodge*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

ADAMS, J.—The defendant is charged with being the father of a bastard child, born to one Lizzie Mohler, sister to the defendant's wife, all residing in the city of Burlington. The complainant testified in these words: "My sister and I were not on good terms all the time. Seventh of July I went

over to his house—don't know what time. Mr. and Mrs. Karver were all that were there. Left there quarter after nine. We had not gone more than three blocks when this thing took place, in an open public place, ground kind of sidling, fronting one street. He asked me on that lot. It was the first time anything ever took place between us. I did not consent. I jerked away and walked off. He followed me and threw me right down. He ravished me. I hollered. There were no marks on my person. My hat was torn." She also testified that he had connection with her another time by force in nearly the same place.

The defendant testified, denying that he ever had connection with her.

For the purpose of impairing the credibility of her testimony, the defendant's counsel asked him, when a witness upon the stand, two questions, which are in these words: "Int. 28. You say that she came to your house in January, 1882. State how she came to leave. What was the trouble?" "Int. 29. You tell the court what imprudent act you noticed, or about a man being with her one night, at your house. Go on and tell it; in January, 1882?" Both these questions were disallowed as immaterial, and the ruling is assigned as error.

In our opinion the witness should have been allowed to answer them. That the complainant had an illegitimate child by some one is not denied. That she charged it upon the wrong person the jury did not believe. But she might do so if she was not a truthful person, and had a strong motive for doing it. The questions asked and disallowed indicated upon their face that the defendant expected to prove that the complainant was guilty of imprudent conduct with some man at the defendant's house, and that she had trouble, and left the family.

If the defendant and his wife witnessed unchaste conduct on the part of the complainant, and she had trouble with them, either on that account or any other, such fact, we think,

would tend to render the defendant's testimony more credible, and her testimony less so, by showing a motive on her part for charging upon him the paternity of a child which should have been charged upon another; and especially is this so, as the charge made is that she was ravished.

Again, in a case of this kind, where the only question is that of paternity, it should always be allowable to show unchaste conduct with a man, other than the defendant, and especially if the circumstances are such as not to preclude the possibility that the other was the father of the child.

It is objected by the attorney-general that the questions are not sufficiently explicit to indicate what the defendant expected to show. But we do not think that this objection occurred to anyone on the trial below. The questions were asked in examination in chief, and were about as explicit as they could well have been, without being leading. We think that the court fully understood the drift of the inquiry, but did not deem it a proper one. In our opinion, the court erred in disallowing the questions.

REVERSED.