THE STATE OF IOWA v. THOMAS SEEVERS, Appellant.

**Bastards:** EVIDENCE: *Impeachment.* In an action for the support of a bastard, the general reputation of the prosecutrix as to chastity may be shown, as affecting her credibility; but particular unchaste acts cannot be proved, unless they occurred at or near the time the child was begotten.

RELEVANCY. In an action for the support of a bastard, it was not error to permit the prosecutrix to prove that soon after the child was born she was arrested for attempting to poison a witness for defendant, where there was evidence tending to show that the prosecution was instituted by defendant to influence the bastardy proceeding which was then pending.

HARMLESS ERROR. Where a mother of a bastard claimed she was seduced under promise of marriage, it was not prejudicial error to permit her to testify that she was divorced from her former husband, and that he had married again, though it was immaterial to defendant's liability for the support of the bastard.

SAME. Error if any in admitting evidence that the prosecutrix in bastardy proceedings had been divorced from her husband and that he had married another woman, is not prejudical to defendant, where the uncontradicted evidence showed that she had never met her husband for several years before the children in question were begotten.

CURING ERROR. Error in permitting the prosecutrix to testify that she was without money to support her bastard child was cured by an instruction withdrawing the evidence, and directing the jury not to consider it.

INSTRUCTIONS: *Request.* No special reference need be made, in the absence of a request therefor, to testimony offered by defendant in bastardy proceedings that at the time conception took place he was suffering from an injury rendering him physically unable to have sexual intercourse, where such testimony was not referred to in the pleadings.

**New Trial:** DISCRETION: *Newly discovered evidence.* Refusal of a new trial of bastardy proceedings for newly discovered evidence that the husband of the prosecutrix had sexual intercourse with her at about the time the children in question were begotten at a hotel in the southern part of the city, is not an abuse of discretion where the husband alone makes affidavit in regard thereto, his statements are in many respects unreasonable and improbable

and are contradicted by the proprietors of all the hotels in that part of the city and by the testimony of prosecutrix.

**Appeal: REVIEW OF VERDICT.** In an action for support of a bastard, the witnesses for the prosecutrix, many of whom were of good character, testified that she was a woman of good repute. Witnesses for defendant, the most important of which were persons of bad character, testified that prosecutrix was a prostitute, and that she stated that she did not know that defendant was the father of her child. *Held*, that a verdict for the prosecutrix should not be reversed as contrary to the evidence.

*Appeal from Mahaska District Court.*—HON. BEN McCOY, Judge.

THURSDAY, APRIL 6, 1899.

ACTION at law to recover of the defendant support for bastard children. There was a trial by jury, and a verdict and judgment against the defendant, from which he appeals. —*Affirmed.*

*Seevers & Bryan* for appellant.

*Dan Davis, C. C. Orvis, B. W. Preston, and James Carrol* for the state.

ROBINSON, C. J.—On the 14th day of May, 1896, Mrs. Mary E. Brooks gave birth to two children. She alleges that they are illegitimate, and that the defendant is their father. This action was brought to require him to provide for their support. Mrs. Brooks was thirty-four years old at the time of trial. She was born in Keokuk county, and resided there until she was about nineteen years of age. Three or four years of that time she lived in Sigourney. She left Keokuk county early in the year 1882, and, as we understand the record, went to Villisca, and was married, in the western part of the state, in August of the same year, to W. R. Brooks. They lived together as husband and wife at different times for about four years, when they finally separated. It appears that Mrs. Brooks went back to Sigourney, and again resided there, but the length of her

second residence is not shown. She returned to the western part of the state in the year 1887, and made her home at Villisca and Creston—nearly all of the time at the place last named—for a period of seven or eight years. In December of the year 1894 she went to Oskaloosa. On the 29th day of that month she was employed by the defendant as a housekeeper or servant, and she remained in his employment until the 7th day of November, 1895. His wife had died in April, 1894; and, during the time Mrs. Brooks was in his service, the members of his household were himself, his mother, who was eighty-five years of age, and Mrs. Brooks. The latter claims that three or four weeks after she went to his home he began to pay her special attention, and asked the privilege of visiting her in her room, and that in February, 1895, under promise of marriage, she submitted to sexual intercourse with him, and that after that time, during the remainder of her stay in the house, they had sexual intercourse once or twice each week. He denies that he ever paid Mrs. Brooks any attention, denies the alleged promise of marriage, and denies that he ever had sexual intercourse with her. The jury found the defendant guilty, and the judgment of the court required him to pay one hundred dollars annually for each child until it should reach the age of twelve years, or a gross sum of two thousand, one hundred dollars, less any payments made, if paid before May 14, 1900.

I. The defendant offered evidence which tended to show that Mrs. Brooks had been a prostitute for many years before he met her, that she had been an inmate of houses of ill fame in different towns, and that she was a woman of bad moral character. It is not claimed that the facts which such evidence tended to prove would be a defense in this action, but that they may properly be considered as affecting the credibility of the prosecutrix as a witness. It is insisted that the district court erroneously refused to admit evidence respecting

her reputation at Sigourney, and in regard to particular acts of prostitution. The appellant has failed to point out in the record the rulings thus questioned. We have searched it, however, and find that he was permitted to offer evidence which tended to show that the reputation of the prosecutrix, as to her moral character, while she resided in Sigourney, was bad, and that he was permitted to show that a house in that town in which she lived was reputed to be a house of ill fame, and that an information charging her and the woman with whom she lived with keeping a house of ill fame was filed with the mayor in February, 1887, but that the persons accused left town, and the prosecution was continued. We also find that the court · refused to admit some evidence which was offered to show the reputation of the house in Sigourney ` in which the prosecutrix lived, the character of the house, the purpose for which it was kept, and the reputation of the woman who kept it. Evidence to show that the prosecutrix used profane and obscene language was also rejected. Section 3649 of the Code of 1873, which was in force when the rulings in question were made, provided that "the general moral character of a witness may be proved for the purpose of testing his credibility." Under that provision the general moral character of a witness, or his general reputation as to morals, not his character or life as known to the impeaching witness, may be shown. *State v. Egan,* 59 Iowa, 636. But proof of specific acts of vice is incompetent. *Kilburn v. Mullen,* 22 Iowa, 498; *State v. Sterrett,* 71 Iowa, 386; *State v. McGee,* 81 Iowa, 17. It has been held in this class of cases that evidence of improper relations between the prosecutrix and a man not the defendant is immaterial, unless it be shown that such relations might have existed at the time the child in dispute was conceived. *State v. Johnson,* 89 Iowa, 1; *State v. Granger,* 87 Iowa, 355; *Olson v. Peterson,* 33 Neb. 358 (50 N. W. Rep. 155.) The case upon which the appellant relies as authorizing proof of particular acts of unchastity are not applicable to

the facts in this case.   The evidence held in *State v. Read,* 45 Iowa, 469, to have been admissible, tended to show that a person other than the defendant might have been the father of the child there in question.   In *State v. Karver,* 65 Iowa, 53, the evidence held to be material tended to show a motive on the part of the prosecutrix for giving false testimony, and unchaste conduct with a man other than the defendant at about the time of conception.   In *State v. Woodworth,* 65 Iowa, 141, it appeared that the prosecutrix had given birth at different times to two illegitimate children, and that the defendant could have been the father of but one of them; and it was held proper to inquire as to the father of the first child, if his intimacy with the prosecutrix continued until the second child was begotten.   In the case of *State v. Borie,* 79 Iowa, 605, it appeared that the prosecuting witness was with one Damon at about the time the child in question was conceived, under such circumstances that they might have had sexual intercourse.   It was held that evidence was material to show that seven or eight years before that time, when she was engaged to be married to Damon, they were locked in a room in an hotel together for several hours, for the reason that, if they were so locked in a room for an improper purpose, an inference of wrongful intercourse between them at about the time conception occurred might be drawn.   See *People v. Keefer,* 103 Mich. 83 (61 N. W. Rep. 338); *Ramey v. State,* 127 Ind. Sup. 243 (26 N. E. Rep. 818).   Some evidence tends to show that the prosecutrix sustained improper relations with one George Henry Smith while she was at Sigourney, and that he visited her in Oskaloosa, but our attention is not called to any evidence which shows that he was with her at or near the time when the children in controversy were begotten.   After a careful examination of the objections presented on this branch of the case, we reach the conclusion that they are not well founded.   The rulings of the court on the admission of the testimony considered were, on the whole, favorable to the defendant.

II.   The state was permitted to prove that, a few weeks after the children in question were born, the prosecutrix was arrested on the charge of having attempted to poison a witness for the defendant named Roberts; and of that the defendant complains.   There was evidence from which the jury may properly have inferred that the prosecution was instituted and carried on by the defendant for the purpose of influencing the determination of this cause, which was then pending, and to that extent preventing a trial on the merits.   If that was true, the fact was a proper one for the consideration of the jury.

III.   The prosecutrix was permitted to testify that she was divorced from her husband, and that he had married another woman, and to introduce in evidence what purports to be a certified copy of the license issued for that marriage.   It is claimed by the defendant that it was not only material, but of the utmost importance, to the prosecutrix, to show that she had been divorced and therefore was competent to enter into a valid contract of marriage, in order to show that she may have been seduced under promise of marriage, and to rebut the presumption, which must otherwise arise, that her husband was the father of her children. Whether the prosecutrix was seduced, or whether she had been divorced, as claimed by her, were not important issues in the case. Had her claims been false in both particulars, that fact would not have availed as a defense in this action. If the defendant is the father of her children, he is liable in this action, even though she was the lawful wife of another at the time the children were conceived, and knew the fact.   *State v. Lavin,* 80 Iowa, 555.   The evidence received during the trial shows, without contradiction, that the prosecutrix had not met her husband for several years before her children were begotten.   Therefore it was immaterial whether she had been divorced, and the evidence given on that question could not have been prejudicial.   It tended to show, however, that she believed she was divorced and

free to marry again at the time of the alleged seduction; and her belief, rather than the fact, was what influenced her at that time, if her claim in regard to what occurred be true. We conclude that there could have been no prejudicial error in admitting the evidence under consideration, and whether there was in fact error in admitting it we do not determine.

IV. The prosecutrix was permitted to testify that she was without money or other property with which to support her children. That was erroneous. *State v. Lavin,* 80 Iowa, 555. However, the court afterwards, and during the trial, withdrew that evidence from the jury, and in the charge directed the jury not to give it any consideration; and the error was thus cured.

V. Complaint is made of several paragraphs of the charge to the jury. The third was not well drawn, and is not to be commended, but nothing it contains could have prejudiced the defendant. Its probable effect was favorable to him. The fifth paragraph was not erroneous. Other paragraphs are criticised, but we think without sufficient reason. The charge as a whole was fair to the defendant, and, although in some parts there are indications of haste or lack of care, they do not, so far as called to our attention, contain anything of a nature to prejudice the defendant.

VI. Testimony was offered on the part of the defendant which tended to show that, in attempting to mount a bicycle in the summer of 1895, he received such an injury that he was physically unable to have had sexual intercourse at the time the children in question were begotten. The district court did not, in its charge, call the attention of the jury to that claim, and the appellant contends that the omission was an error. We do not find that any instruction in regard to the matter was asked, it was not referred to in the pleadings, and we do no think the court erred in not making special reference to it in the charge.

VII. After the verdict was returned, the defendant filed a motion for a new trial, which was overruled. It was based in part upon alleged newly-discovered evidence set out in an affidavit made by W. R. Brooks. In that he states that he is the husband of the prosecutrix; that after their marriage, at a time not stated, he moved to Leavenworth, where she joined him, but that she was in poor health, and her condition was such that they could not cohabit together, and she returned to Villisca; that on account of her infidelity he concluded not to return to Villisca, but, after repeated promises by her to reform, he went to Villisca and lived with her; that there were other separations and other condonations until about the year 1892, when he went in search of a location, but learned that she had resumed her old habits; that since that time he had met her occasionally; that in the latter part of July or in the first part of August, 1895, he met her at a hotel in the southern part of Oskaloosa, where he was stopping, and that she occupied a room with him as his wife; that he afterwards learned that she was in distress, and again visited Oskaloosa to assist her; that her attorneys told him he could not be permitted to see her, and, to obtain an affidavit from him to the effect that he had been divorced from her, threatened to prosecute him for adultery, and requested him to go where he could not be found; that he did not at that time see his wife, but signed a paper to the effect that he had been divorced from her, and that he did so in order to help her, at the same time saying the affidavit was not true, and refusing to swear to it; and that he then went to the state of Kansas, where he remained until after the trial. The affidavit of the defendant, tending to show lack of knowledge on his part of what Brooks would testify to, and diligence to ascertain it, and other affidavits tending to show that Brooks was seen in Oskaloosa about the middle of August, 1895, and that he was not in that city, but in the state of Kansas, during the trial of the cause, were also filed in support of

the motion. In resistance, the plaintiff filed the affidavit of Brooks, made in September, 1896, to the effect that he was divorced from the prosecutrix in March, 1887, and married another woman in August of the same year; that the prosecutrix was an unmarried woman, and had always been chaste and of good character; and that he made the statement voluntarily, and had no interest in her case, other than to see justice done. Several persons testified that they saw Brooks in Oskaloosa during the trial. The attorneys referred to in his affidavit deny his statements respecting them, and say that he made claims at variance with those contained in his second affidavit. The proprietors of the only hotels in the southern part of the city state that the prosecutrix did not stop at their houses at the time stated by Brooks in his affidavit. Numerous other affidavits were filed, but we would not be justified in referring to them at length. The matter of chief importance, on which the motion for a new trial was based, is the alleged visit of Brooks to Oskaloosa, and the meeting with the prosecutrix, at about the time the children in question were begotten. The only evidence that he met his wife as claimed is contained in his second affidavit. That is contradicted, in effect, by his first one, by the proprietors of the hotels in the part of the city where he says he met his wife, and by her testimony as a witness. His statements are in many respects unreasonable and improbable. We do not think an abuse by the district court of the discretion with which it was vested in refusing a new trial has been shown.

VIII. This case was closely contested in the district court. Many witnesses were examined on each side, and much of the testimony is in such irreconcilable conflict and of such a character as to make it certain that a large part of the testimony was wilfully false. If the witnesses for the prosecutrix are to be believed, she is a woman of good repute excepting her relations with the defendant. Many witnesses testify to that effect, and among them are

persons of excellent character, who knew of her daily life in Creston for years. If the testimony for the defendant be credible, she has lived the life of a prostitute from the time she was married, and has stated to different persons that the defendant was not, or that she did not know that he was, the father of her children. It is to be said in this connection that a considerable number of the most important witnesses for the defendant are admittedly people of vile habits and bad character, whose testimony might well be doubted. In view of the conflict in the evidence, it cannot be said that the verdict is not supported by the evidence. We have given to this case much consideration, but fail to discover any ground upon which a reversal of the judgment of the district court would be authorized, and it is therefore AFFIRMED.