E. T. HUNT, Appellee, v. WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY, Appellant.

**Evidence:** ERRONEOUS ADMISSION: INSTRUCTION. Any error in admitting evidence that a motorman used intoxicating liquor, and was seen with it in his possession several days before the accident complained of, was cured by an instruction withdrawing the evidence from the jury.

**Street railways:** NEGLIGENCE: EVIDENCE. In an action for personal injury based upon the incompetency of a motorman and negligence of the company in retaining him in its employ, evidence of the previous reckless operation of cars by the motorman, and that his conduct had been reported to the company before the accident complained of, was admissible in support of his alleged incompetency and negligence; and even though the report of the motorman's conduct in previously operating a car was too indefinite to render evidence of the same admissible, still it was not prejudicial, where the officer of the company to whom it was made stated as a witness that he had already heard of his conduct.

**Same.** Evidence of the motorman's conduct with passengers while operating the car, and of his delay in starting the car on its return trip because of such conduct, was admissible as bearing upon the question of his negligence; but was insufficient to warrant recovery against the company, in the absence of proof of its negligence in retaining the motorman in its service.

**Impeaching Evidence.** Impeaching evidence consisting of proof of contradictory statements made outside of court must be such as contradicts the testimony of the witness in chief.

**Same.** The signed minutes of the testimony of a witness taken before the grand jury may be used for the purpose of impeaching him.

**Evidence:** EXAMINATION OF WITNESS. A witness should not be asked on cross-examination if he had not been indicted for a crime growing out of the accident on which the cause of action in which he was testifying was based.

Impeaching evidence: STATUTES. A witness may be impeached by proof
of his general bad reputation for truth and veracity in the community in which he lives, or from which he has recently come; the statutes allowing proof of conviction of a felony, or of general moral character are not intended as a codification of the law or to define the only methods of impeachment.

Street railways: NEGLIGENCE: INSTRUCTIONS. The instructions in this case that if the injuries of the plaintiff resulted from the negligence of the motorman, combined with the negligence of the company in retaining him in its employ, the verdict must be for plaintiff; that even though the motorman had previously been reckless in operating his car that fact should not be considered in determining his negligence at the time of the accident complained of; that the burden was on plaintiff to show that the accident was the proximate result of the negligence of the motorman, and that but for such negligence and that of defendant the accident would not have happened, all had relation to the negligence of the company, and were not objectionable as eliminating the question of contributory negligence.

*Appeal from Blackhawk District Court.*—C. E. RANSIER, Judge.

TUESDAY, MAY 6, 1913.

ACTION at law to recover damages for injuries sustained by plaintiff in a collision of street cars upon defendant's line of road. Trial to a jury, verdict for plaintiff in the sum of $10,000, which the court reduced to $7,500, and for that amount, with interest, rendered judgment. Defendant appeals.—*Reversed.*

*Mullan & Pickett,* for appellant.

*E. E. Hasner,* and *Edwards & Longley,* for appellee.

DEEMER, J.—Plaintiff, a motorman in defendant's employ, was injured in a street car collision happening on one of defendant's lines of road in the city of Waterloo, and claims that the accident occurred by reason of the negligence and

incompetence of one Smith, a motorman, also in defendant's employ, in charge of the car which collided with the one which plaintiff was driving. It is alleged that defendant was negligent in retaining Smith in its employment after knowledge, actual, or constructive, that he was an incompetent motorman. This was denied by defendant, and it also pleaded that the accident was due to the negligence of the plaintiff in carelessly running past a block signal constructed for the safety of its employees. The case went to the jury upon these issues, with the result above indicated. Many errors are assigned for a reversal of the judgment. Such as are important or controlling we shall now consider.

I. Testimony was taken tending to show that Smith used intoxicating liquors on some days prior to the accident, and was seen with liquors in his possession. As this testimony was taken from the jury by an instruction, there is nothing here left for us to consider.

1. EVIDENCE: erroneous admission: instruction.

II. Complaint is made of the admission of testimony from several witnesses as to the negligence of the motorman Smith on what was known as the Parker street curve. These witnesses testified to facts which, if true, would tend to show that Smith was angry over having to back up his car to permit a woman to alight, and that he started it with a sudden jerk, and ran his car at a high rate of speed onto a curve in the street railway known as the Parker street curve, throwing some of the passengers from one side of the car to the other, and otherwise severely jostling them. It was shown that this conduct was reported to some of the defendant's superior officers, and that they had knowledge thereof before the accident in question occurred. This was one method, if not the only one, whereby to show Smith's incompetency or gross negligence; and the testimony was admissible. It is said that one of the witnesses who testified to reporting the matter was not explicit enough, and that the court should not have per-

2. STREET RAILWAYS: negligence: evidence.

mitted him to testify. The answer to this is that the witness to whom the report was made said that he had already heard of the occurrence.

III. The car which Smith was driving ran out to what was known as Electric Park, which was at the end of the line. There the trolley pole had to be changed, and the car, when the time came for it to start, went back over the same line toward the city of Waterloo. On the night in question, two girls boarded the car, which Smith was driving, and, instead of getting off at the place which was nearest their destination, went on to the end of the line, and then came back with the car, being, as we understand it, on board when the accident occurred. On the way out to Electric Park is a station, or stopping place, known as Galloway, and at this station a witness, who was accustomed to take the car at about 10 o'clock at night on its return trip, in order to go to his home, saw the car as it passed the station, went to the end of the line, and returned. This witness, as well as one other, was permitted to testify to the usual running time from Galloway to Electric Park and return, and then to testify as to the running time of the car which Smith ran on the evening in question. This testimony was to the effect that the usual time was from five to seven minutes, and that on the evening in question it was from eighteen to twenty minutes. In addition to this, witnesses were permitted to give testimony to the effect that both the motorman, Smith, and his conductor were flirting with the girls at the end of the line, and that Smith had one or both of them in the vestibule of the car, with the lights extinguished, or the curtain down for some little time, while the car was at Electric Park. There is no other showing as to whether the car left the park on its regular schedule time, and it may be that this testimony had a tendency to show that the car left the park behind time, and that when it passed Galloway it was run at a high rate of speed. However this may be, we think the testimony was admissible for the purpose of showing how the car was handled

3. SAME.

on this trip just before the accident occurred. It is strenuously argued that the testimony as to the conduct of the motorman and conductor with these girls should not have been admitted, and that it was highly prejudicial in character. It is true, of course, that the defendant company had no knowledge of these facts; but such evidence was not essential to the introduction of the testimony. The conduct of Smith with reference to the management of the car on the evening in question just before the accident was one of the material issues in the case. That is to say, it was necessary for plaintiff to show that the accident happened by reason of the mismanagement of the car in question. Such fact would not, of course, justify a recovery; for the negligence charged was the keeping of an incompetent man in the service of the company, with knowledge or notice of his incompetency. But plaintiff had to show that the accident was due to this incompetency and that Smith was guilty of some negligent act which in itself or in conjunction with some other act, not attributable to the negligence of the plaintiff, caused the injury. The testimony complained of was all admissible as showing the manner in which the car was operated on this, its last trip before the accident.

IV. Certain testimony offered by plaintiff for impeaching purposes is objected to on many grounds. First, it is contended that the testimony was not contradictory of

4. IMPEACHING
   EVIDENCE.

anything the witnesses who were sought to be impeached had testified to in chief; second, that no foundation was laid; and, third, that the testimony was immaterial. We are constrained to hold that as to the witness Lamb the contention of appellant's counsel must be sustained. He was not asked on direct examination any question which had reference to the subject-matter upon which he was sought to be impeached. It is fundamental, of course, that, in order to impeach by this method, the statement must be contradictory of the witness' testimony in chief: *Elliott on Evidence,* sections 974, 975, and cases cited. In no other

respect was the testimony admissible. We might perhaps be disposed to overlook the error here, were this the only one in the case; but, in view of a retrial, have thought it necessary to condemn the ruling as to the impeachment of witness Lamb. The testimony was not admissible as substantive proof; for it was the declaration of an agent disconnected with any present act in or about his master's business.

V. The signed minutes of testimony given by a witness for defendant before the grand jury were used by plaintiff for the purpose of impeaching him; and in this there was no error.

5. SAME.

VI. Misconduct of counsel for plaintiff in examining and cross-examining witnesses is complained of. We see no prejudicial error here, unless it be in a single instance when he insisted on asking one of defendant's witnesses, Smith, as to whether or not he and his conductor had been indicted by the grand jury for the crime of manslaughter arising out of the collision in question. The trial court, it is true, sustained an objection to the question, but such questions should not be asked of a witness, because of the effect they have upon a jury.

6. EVIDENCE: examination of witness.

VII. One of the important and material witnesses for plaintiff was a man named Walker, and defendant sought to impeach him by showing that his general reputation for truth and veracity in a community from which he had recently come was bad. Defendant also sought to show that he had gone under assumed names at various places before coming to Waterloo and entering the employ of the defendant company. The trial court refused to permit the testimony first referred to, to go to the jury, and permitted a partial showing as to witness having gone under an assumed name. In both rulings we think there was error. By statute previous conviction of a felony or the general moral character of a witness may be shown for impeaching purposes. Code, sections 4613, 4614. But manifestly these are not the only methods

7. IMPEACHING EVIDENCE: statutes.

of impeachment. Contradictory statements or contradictory conduct may be shown. It may also be shown that he failed to speak when he should; and it is a general rule that in the absence of statute a witness' bad reputation for truth and veracity may be shown. *State v. Sater*, 8 Iowa, 420; *Carter v. Cavenaugh*, 1 G. Greene, 171. In the absence of statute, however, it would seem that his general bad moral character or reputation cannot be shown. See cases cited to these propositions in 7 Ency. of Evidence, pages 191–195; and *Kilburn v. Mullen*, 22 Iowa, 498. Also *Elliott on Evidence*, sections 978, 980, and cases cited.

The trial court seemed to be of opinion that only the general bad moral character of the witness may be shown, evidently basing its ruling on the thought that the statute has now codified the law in this respect, and, perhaps, relying to some extent on *State v. Gregory*, 148 Iowa, 152. This latter case does not decide the question, and what is there said is no justification for the ruling. The statute was not, in our opinion, intended as a codification of the law; but to make clear for this state a rule which is much in dispute in other jurisdictions, permitting the general bad moral character of a witness to be shown for impeaching purposes. Such is the fair inference from the decision in *State v. Egan*, 59 Iowa, 636. The text-books and cases generally hold that general bad reputation of a witness for truth and veracity in the community in which he lives, or in which he has recently resided, is admissible for impeaching purposes. See *Wigmore on Evidence*, section 922; *Dance v. McBride*, 43 Iowa, 624; *State v. Potts*, 78 Iowa, 656; *McGuire v. Kenefick*, 111 Iowa, 147; *In re Will of Brown*, 143 Iowa, 649. The time and place were not too remote to justify the ruling of the trial court. *Jones v. State*, 104 Ala. 30 (16 South. 136); *Wagoner v. Wagoner* (Md.) 10 Atl. 221; *McGuire v. Kenefick, supra; Douglass v. Agne*, 125 Iowa, 67.

VIII. It is said that there was not enough testimony to take the case to a jury, and that defendant's motion for a

directed verdict should have been sustained. In this we cannot agree with appellant's counsel. True, there was a conflict in the testimony—very sharp and pointed—but the ultimate questions of fact were for a jury, and the trial court did not err in submitting the same.

IX. Many of the instructions are complained of. Some because incorrect, others because inconsistent and conflicting, and still others because insufficient to fully state the law of the case. We find no serious conflict or inconsistency, and as a rule the instructions are clear, pointed and well adapted to the issues presented. We need refer to but few. Instruction No. 6 reads as follows:

8. STREET RAIL-
WAYS: negli-
gence: instruc-
tions.

. . . If you find from the evidence that the plaintiff's injuries resulted from recklessness and imprudence of the motorman, Smith, combined with negligence of the defendant in retaining Smith in its employ, and that the plaintiff would not have been injured but for such combined incompetence and negligence, then you would be warranted in finding that such combined negligence and incompetence was the cause of plaintiff's injuries. If you fail to so find, the plaintiff cannot recover.

This is claimed to be erroneous, because it eliminates plaintiff's contributory negligence. In order to get the full aspect of this instruction, we here quote the remainder of it. It reads:

The plaintiff claims that the motorman, Smith, with knowledge that the signal lights indicated the track was blocked and closed to his car, and that another car was approaching, recklessly and imprudently drove his car upon such block, and thus caused the collision. The defendant denies such claim, and contends that the said Smith was operating his car in a reasonably careful and prudent manner upon a portion of the track which the signal lights indicated was open and unblocked. On this issue you are instructed that even though you should find that the motorman, Smith, had been at other previous times reckless, or imprudent in the management of his car, such fact, if it is a fact, could not be considered by you

as tending to show that said Smith was reckless or imprudent at the time of the accident complained of, but the burden of proof is upon the plaintiff to show, by a preponderance or greater weight of the evidence, that the accident complained of proximately and directly resulted from the imprudence and recklessness of the said Smith at that particular time in operating his car, and that but for such recklessness and imprudence of said Smith, combined with negligence of the defendant in retaining said Smith in its employ, such accident would not have happened.

Taken together, there was no error because the instruction related wholly to the one question of defendant's negligence, and must have been so understood by the jury. No error appears in the other instructions.

. For the errors pointed out, the judgment must be, and it is, *Reversed.*