VERNON HALLIGAN, Appellee, v. LONE TREE FARMERS EXCHANGE et al., Appellants.

No. 45720.

1278

November 12, 1941.

Welch, Acrea & Welch and William R. Hart, for appellants.

Edward L. O'Connor and Arthur O. Leff, for appellee.

GARFIELD, J.—Defendants are the Lone Tree Farmers Exchange, a corporation operating a grain elevator, F. H. Lenz, its president, and Frank Hoskins, its manager. On April 17, 1939, defendant Lenz signed and swore to a preliminary information charging plaintiff with the crime of larceny. Plaintiff was taken into custody on a warrant and confined in the county jail four hours. He was then taken before the committing magistrate for arraignment where his attorney waived preliminary hearing and plaintiff was bound over to the grand jury. On May 2 he was indicted. On May 17 the county attorney, after conferring with the directors of the elevator, recommended dismissal of the indictment. Thereupon the trial court dismissed the indictment. This suit for malicious prosecution followed. The jury returned a verdict for plaintiff of $1,525. Motion for new trial and other motions were overruled and defendants have appealed to this court.

It is first urged that the evidence is insufficient to prove want of probable cause for the commencement of the prosecution and that therefore the trial court should have directed a verdict for appellants. This necessitates some review of the evidence.

Plaintiff-appellee operated a truck, hauling grain and other produce for the elevator and various farmers in the vicinity of Lone Tree. Sam Herring, Robert Cerny, Gordon Churchill alias Jack Burns, and Harry Stock were employees of the elevator. Appellants' testimony shows that on April 12, 1939, the employee Burns informed appellant Hoskins, the manager, that appellee had stolen a case of oil belonging to the elevator which he had sold to Burns for 75 cents. At about this same time the employee Herring informed Hoskins that he (Herring), Burns, and Cerny had stolen a load of corn and a load of soybeans from the elevator in the fall of 1938; also that he (Herring) and appellee, Halligan, had stolen a load of corn from the elevator on or about December 20, 1938; that appellee had loaded the corn in his truck while Herring maintained a lookout; that appellee sold the corn and gave Herring between $25 and $30 as his share of the proceeds.

It appears without dispute that on the evening of April 14 Hoskins went to appellee's home and that appellee, pursuant to the manager's request, accompanied Hoskins and the employee Stock to the elevator office. Hoskins had procured Stock to act as a witness to the conversation. At this meeting appellee was asked about the theft of the oil and its sale to Burns. He denied this charge. Appellee was then asked about his having stolen corn. Both Hoskins and Stock as witnesses testified that appellee then confessed stealing the load of corn. Appellee as a witness insists that at this meeting he denied having stolen corn. In this conversation appellee charged Hoskins with having cheated the farmers on weights of grain.

On the same evening following this session in the elevator between appellee (Halligan), Hoskins and Stock, the directors of the elevator company were summoned, at the suggestion of Hoskins, to meet at the home of one of the directors. At least some of the directors were farmers living in the vicinity. It was late in the evening before this meeting was called. There is

testimony that appellee had gone to bed for the night even before Hoskins called at his home to take him to the elevator when the claimed confession of appellee was made. At the meeting of the directors, Hoskins stated that appellee had confessed to him and Stock the theft of a load of corn from the elevator. After some discussion, a committee composed of Hoskins and two of the directors was chosen to go to Iowa City, the county seat, that same night. The jury might have found that this was for the purpose of causing the immediate arrest of appellee. The committee of three was unable to contact the sheriff but found the deputy sheriff at home and in bed, between one and two in the morning. The deputy sheriff testified that these three men at this late hour "asked me to make the arrest without a warrant, but I thought it was better to have an information signed and a warrant issued." Thereupon the members of the committee returned to their homes. It was about four in the morning when appellant Hoskins arrived back at his home.

The following day the directors again met and it was decided to lay the matter before the county attorney. On the same day Hoskins took Herring to see the county attorney. Two days later at Hoskins' request, Herring and Cerny went to see Mr. Hart, attorney for the elevator. Mr. Hart prepared an affidavit which was signed by Herring, reciting Herring's claim that appellee, with Herring's assistance, had stolen the load of corn. Mr. Hart also prepared an affidavit which was signed by Herring and Cerny reciting the theft of the load of corn and the load of soybeans and the division of the proceeds between Cerny, Herring, and Burns. These affidavits were then placed in the hands of the county attorney. The county attorney prepared a single information charging appellee and Herring, Cerny, and Burns with the theft of corn and soybeans from the elevator on or about October 26, 1938. This information was signed, as heretofore stated, by appellant Lenz, the company's president, and filed by him with the committing magistrate. The issuance of the warrant, the arrest and subsequent indictment of appellee followed, as heretofore related. The witnesses before the grand jury on whose testimony the indictment was returned were Herring, Hoskins and Stock. Herring pleaded guilty and was

sentenced to five years in the penitentiary but released on bench parole. Burns stood trial and was acquitted at the hands of a jury in district court. Since the evidence against appellee was similar to that against Burns, and the charge against appellee was assigned for trial at the same term before the same jury panel as heard the Burns trial, the county attorney felt he was not justified in bringing the indictment against appellee on for trial. After talking the matter over with the directors of the elevator and advising them that he, the county attorney, did ·not feel justified in trying the indictment against appellee, there was a voluntary dismissal thereof.

I. We have concluded that the question of whether there was probable cause for the prosecution, under this record, was one of fact for the jury. The existence of probable cause is for the determination of the jury unless ''the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion therefrom.'' Bair v. Schultz, ·227 Iowa 193, 200, 288 N. W. 119, 122, and cases cited. See also Johnson v. Miller, 69 Iowa 562, 29 N. W. 743, 58 Am. Rep. 231. We think the following cases in which it was held there was no jury question are distinguishable: Dickson v. Young, 208 Iowa 1, 221 N. W. 820; Granteer v. Thompson, 203 Iowa 127, 208 N. W. 497; Wilson v. Lapham, 196 Iowa 745, 195 N. W. 235; Knapp v. Chicago, B. & Q. R. Co., 113 Iowa 532, 85 N. W. 769.

The jury might have found that appellee at the meeting in the elevator (and at all subsequent times) stoutly protested his innocence. The only witness whom it is claimed had direct knowledge of the alleged theft of the corn by appellee is the employee Herring. If the crime was committed, he was an accomplice whose testimony must be corroborated before appellee could be convicted. Section 13901, Code, 1939. If appellee's testimony is to be believed, all the information Hoskins had was the charge made by Herring which was denied ,by appellee. The jury might have found that the decision was made to prosecute appellee at the hurried night meeting of the directors before the county attorney was consulted and that the county attorney never was informed that appellee had denied the charge. It is true there are inconsistencies in testimony favor-

able to appellee. There are circumstances tending to show probable cause. However, appellants' testimony is not free from inconsistencies and there is testimony pointing to the want of probable cause. We will not review the evidence in detail. We are justified in giving some weight to the conclusion of the trial court that the evidence was sufficient.

II. Appellants' second complaint is the sustaining of an objection to a question asked their witness, the county attorney. The witness was asked whether on the day the criminal charge was submitted to the grand jury he was of the opinion there was probable cause to believe appellee guilty of the crime charged. Appellee objected to the question as incompetent, calling for an opinion and invading the province of the jury. The court properly sustained the objection. The question of probable cause was an ultimate issue for the determination of the jury. This court, as are many others, is committed to the rule that a witness may not express his opinion upon an ultimate fact in issue before the jury. 20 Am. Jur. 654, section 782; Justis v. Union Mut. Cas. Co., 215 Iowa 109, 244 N. W. 696, and cases cited; Eclipse Lbr. Co. v. Davis, 196 Iowa 1349, 195 N. W. 337; In re Will of Jahn, 184 Iowa 416, 165 N. W. 1021.

Even if we were to hold the ruling erroneous, we would be inclined to hold it without prejudice because the county attorney was permitted to testify without objection to substantially the same matter in a somewhat modified form:

"In my judgment there was sufficient ground for the filing of a preliminary information. * * * Mr. Lenz and I discussed the nature of the charge which in my opinion should be preferred against Halligan based on my investigation. I believe the elevator men relied upon my opinion and judgment in the matter and I told Mr. Lenz this information should be filed."

III. The third error assigned is that the court permitted appellee's rebuttal witness, Morrison, to testify from his personal dealings with appellant Hoskins that the latter's character for truth and veracity was bad. Morrison, a farmer, testified on rebuttal that he had had dealings with Hoskins at the elevator. He was then asked: "Q. From your personal ac-

quaintance, dealings and transactions with Hoskins at the elevator, are you acquainted with and do you know his character for truth and veracity?" Over objection, the witness was permitted to give an affirmative answer. He was then asked: "Q. What is it, good or bad?" Over proper objection, he answered "It is bad *with me*." On cross-examination it appeared that the complaint of this witness against Hoskins was that he had taken clover seed to the elevator to be cleaned and did not receive back as much seed as he felt entitled to.

The trial court erred in receiving the above testimony. The general bad reputation of a witness for truth and veracity may be shown for impeaching purposes. State v. Teager, 222 Iowa 391, 398, 269 N. W. 348; Hunt v. Waterloo, C. F. & N. R. Co., 160 Iowa 722, 728, 141 N. W. 334. The prevailing rule is that testimony to prove the character of a witness must be confined to the general reputation which he sustains in the community where he lives. Evidence based upon specific acts or conduct upon particular occasions is inadmissible. Such testimony raises collateral issues and diverts the minds of the jurors from the real issues. 20 Am. Jur. 305–306, section 326; 22 C. J. 479, 482, sections 574–579; State v. Ferguson, 222 Iowa 1148, 1159, 270 N. W. 874.

A statute, section 11271, Code, 1939, provides that the general moral character of a witness may be shown to test his credibility. Our cases hold, however, that even under this statute proof of character. is confined to evidence of general reputation rather than of character as known to the witness independent of reputation. State v. Egan, 59 Iowa 636, 13 N. W. 730; State v. Seevers, 108 Iowa 738, 741, 78 N. W. 705; State v. Gregory, 148 Iowa 152, 154, 126 N. W. 1109.

The reputation of a party is the esteem in which he is held in the community and not the private opinion held by some witness with whom he has had dealings. 20 Am. Jur. 307, section 326; Kitteringham v. Dance, 58 Iowa 632, 635, 12 N. W. 612; Bays v. Herring, 51 Iowa 286, 292, 1 N. W. 558; Dance v. McBride, 43 Iowa 624, 629. It is apparent that Morrison was merely expressing his own opinion of Hoskins' character with-

out reference to the question of general reputation. This was incompetent.

The above rule as to the proper manner of impeaching a witness by showing his bad reputation, either for truth and veracity or general moral character, should not be confused with the rule recognized in this state that an accused in a criminal case may offer proof of his good character by evidence not confined to general reputation, provided such evidence relates particularly to the trait of character involved in the crime charged. State v. Ferguson, supra (see pages 1159–1161 of 222 Iowa).

For discussions of the subject of character testimony, see 24 Iowa Law Review 498; Anno. 82 Am. St. Rep. 26.

Appellee contends that appellants waived their objections to this evidence by cross-examining on the subject. The contention is without merit. 26 R. C. L. 1052, section 58; 22 Iowa Law Review 616; Peacock v. Gleesen, 117 Iowa 291, 295, 90 N. W. 610. See, too, Kelsey v. Continental Cas. Co., 131 Iowa 207, 108 N. W. 221, 8 L. R. A., N. S., 1014; See v. Wabash R. Co., 123 Iowa 443, 447, 99 N. W. 106.

We hold under this record that this error entitles appellants to a new trial. As having some bearing, see Oppenheimer v. Barr, 71 Iowa 525, 32 N. W. 499; Stone v. Hawkeye Ins. Co., 68 Iowa 737, 28 N. W. 47, 56 Am. Rep. 870. The error in receiving the testimony of Morrison was magnified by similar rulings in receiving like testimony of the rebuttal witnesses Meyer and Kessler. This evidence could scarcely fail to divert the attention of the jury from the real issues. The importance which appellee attaches to this testimony is shown by the following quotation from near the beginning of his brief and argument:

"Its manager [Hoskins] had been engaged in sharp practices, such as giving the farmers short weights and excess moisture content for the grain purchased from them for several years. (See cross-examination of appellee's witnesses Morrison, Meyer and Kessler.) * * * The way the farmers were being defrauded by the manager's trickery was a matter of general public knowledge at the time Hoskins decided to make appellee the scapegoat."

■ IV. It is next urged that the trial court erred in treating the case as having three defendants, the corporation, Lenz, and Hoskins. In plaintiff's petition, appellant Lenz was referred to "as president thereof" and Hoskins "as manager thereof" (that is, of the corporation). Appellants' claim is that the officers were not sued in their individual capacity but merely as agents of the corporation which was the sole defendant. It is sufficient answer to this complaint that appellants themselves in their answer and other pleadings and at least until after appellee rested his case clearly treated the case as brought against three defendants and did not move to strike for misjoinder of parties. Constantine v. Rowland, 147 Iowa 142, 146, 124 N. W. 189; Lull v. Anamosa Nat. Bk., 110 Iowa 537, 544, 81 N. W. 784; Miller v. Keokuk & D. M. Ry. Co., 63 Iowa 680, 683, 16 N. W. 567.

■ V. The remaining error assigned is that the trial court submitted to the jury as a basis of recovery the loss of employment of appellee by the elevator as a result of the prosecution. We find no merit in this assignment.

■ VI. In view of a retrial we deem it proper to point out other erroneous rulings to the end that they may not be repeated. Some of the elevator's directors were asked whether they believed what Hoskins told them at the night directors' meeting as to appellee's confession of theft. Also whether they held any ill will toward appellee. The court sustained appellee's objections to these questions. The testimony should have been received. The answers would have had a legitimate bearing both on the question of probable cause and the question of malice. Whenever the belief, intent or motive of a witness is material, it is now well settled that he may testify directly thereto. 20 Am. Jur. 312–315, sections 335–338; Pooley v. Dutton, 165 Iowa 745, 147 N. W. 154; City Nat. Bk. v. Jordan, 139 Iowa 499, 117 N. W. 758.

Appellee's motion to strike appellants' amended and additional abstract is sustained, on the second and fifth grounds thereof. Appellee's motion to strike appellants' brief and argument for alleged failure to comply with Rule 30 of this court is overruled.

For the error of the court pointed out in Division III of this opinion, this cause is reversed.—Reversed.

All JUSTICES concur.