STATE OF IOWA, Appellee, v. HARRY WHITNEY, Appellant.

No. 43033.

DECEMBER 17, 1935.

Carl E. Patterson, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, Assistant Attorney General, and Carl A. Burkman, County Attorney, for appellee.

RICHARDS, J.—Defendant was indicted, charged with rape of Julia Scofield, a female child under the age of sixteen years, under section 12966 of the 1931 Code. The jury found defendant guilty of assault with attempt to commit rape and he was sentenced to a term of ten years in the penitentiary. From such judgment, he has taken this appeal. In support of one of his assignments of error, the defendant claims the case should not have been submitted to the jury on account of the lack of evidence, other than that of the prosecuting witness, tending to connect the defendant with the commission of the offense charged. Defendant relies on Code, section 13900, which provides in substance that a defendant in a prosecution for rape, or assault with attempt to commit rape and certain other offenses, cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense. Under this statute it is incumbent upon the state not only to establish that the offense was committed, but also to point out and identify the defendant as the person by whom the offense was committed by evidence other than the testimony of the injured person. It is well settled that evidence of mere opportunity to commit the offense by reason of defendant's presence at the time it is claimed the crime was committed is not sufficient to meet the statutory requirement, but we have often held that in cases where it is shown that the defendant had himself created the opportunity to commit the offense, it is for the jury to determine whether such evidence connects the defendant with the commission of the offense. In the case at bar the state offered no evidence having appearance of connecting defendant with commission of the alleged offense excepting the testimony that defendant was present at the time and place prosecutrix claims she was raped, and evidence claimed by the state to be sufficient to establish that

defendant created the opportunity to be so present and alone with the prosecutrix at the time it is claimed the offense was committed. In order to have a proper understanding of the state's evidence on this point, it is necessary to relate somewhat of the facts constituting the background. Defendant was forty-two years old, married, living with his wife, two stepdaughters, and his mother-in-law. Julia Scofield lived in the home of her father and mother, the other members of the family being a sister eighteen years old and a brother, known in this record as Junior, who was twelve years old at the time of the trial in March, 1935. All of these people had been residents of Des Moines for many years with occasional absences. Defendant and Mrs. Scofield, mother of Julia, were brother and sister. During many years defendant and his family and the Scofield family had been associating in the friendly and intimate manner natural to such close relationship, members of one family frequently entering the home of the other family without the formality of knocking at the door. Each family rendered help and assistance to the other in many ways. One illustration is the fact that the Scofield family, after a temporary absence, returned to Des Moines in the later part of 1934 and were taken into the home of the defendant and there lived for some time, until other arrangements could be made for their housing. Both families were in necessitous circumstances at the times involved herein and for a considerable period defendant and also Scofield, father of Julia, were both engaged two days per week in employment in the work provided by public funds for relief of the unemployed. Both were waiters by occupation. The mother of defendant and of Mrs. Scofield being ill at her home in Osceola, on January 19, 1935, Mrs. Scofield had gone to that town to help care for the mother. Mrs. Scofield was in Osceola on the following January 21, the date on which it is claimed the offense was committed. It is shown in the evidence of both the state and the defendant that on the date last mentioned there was a letter that had been received in the Scofield home from Osceola, written by Mrs. Scofield after her arrival in Osceola to care for the sick mother of defendant and Mrs. Scofield, and upon defendant's arrival at the Scofield home on the afternoon of January 21, he inquired whether there was any mail from Mrs. Scofield and was informed by the prosecutrix that there was.

Reverting now to the facts claimed by the state to estab-

lish that defendant himself created the opportunity to commit the offense, it is claimed by the state that the offense was committed on the afternoon of January 21, 1935, some time after 2:30 o'clock. It is admitted by the state and defendant that at about 2:30 o'clock on that afternoon defendant, by telephone, called a party living across the hall from the Scofield family, and had a conversation with Junior Scofield who was called to the phone. It is the evidence of the state's witness, Junior Scofield, that in this conversation defendant asked Junior whether Scofield, Junior's father, had gone to the commissary yet, and that defendant said that he, defendant, would be over and take Scofield to the commissary. Soon thereafter defendant arrived at the Scofield home, just after Scofield had departed to the commissary, the arrival of defendant and the departure of Scofield being so close in point of time that it was the evidence of Junior that his father could not have gotten more than downstairs when defendant came up. Defendant had an automobile he frequently drove, Scofield was without one. It is also agreed in the evidence of the state and defendant that when defendant arrived he asked whether there was any mail from Mrs. Scofield at Osceola, and was informed that there was a letter. The Scofield home at this time was on the second floor of a building, only two rooms of which were occupied as such home. When defendant arrived at this home, the only persons present were Julia and Junior Scofield. Shortly thereafter there came into the rooms neighbor children living in the building, two boys and a girl, Dolores Carron, eight years old, hereinafter referred to. One of these boys was fourteen years old, the other nine. There were then in the two rooms the five children and defendant. It is the state's evidence that these children wanted to play marbles and that Junior for that purpose made a search, but his marbles were not to be found. He went into the back room to get some water, defendant being in that room. Julia was in the front room. Junior testified that in the back room defendant said to Junior that Junior's father did not allow the kids in the house to play, to which suggestion Junior testified he paid no attention. Junior testifies that after while defendant came in and offered a penny to him and one to Dolores, and that Dolores not accepting, he, Junior, took both pennies and put them in his pocket. The state's witness, Dolores Carron, a child eight years old, after testifying that she remembered the occasion

when defendant was up to Junior's home, testified to the following matters not related by Junior Scofield, namely:

"Q. Now what did he do when he came? A. He said 'Hello' then he gave Junior a penny. 'Here is a penny, you can go and buy a stick of gum with Junior.' "

It is the evidence of Junior that soon after Junior pocketed the pennies all the children, including Julia, left the rooms and went downstairs and played around, leaving defendant alone in the two rooms constituting the Scofield home, where was admittedly the letter from Osceola. The departure of Julia, with the other children going downstairs to play is not associated with any evidence of any act of defendant indicating a purpose to detain her or to procure her return from downstairs. There is no evidence that Julia and the children had not departed from the rooms for an indefinite period of playing. Next in the sequence of time is the testimony of Junior that he remained downstairs for awhile playing around and went back upstairs. He testified that when he returned upstairs to the rooms he saw Julia sitting on the bed and defendant standing in the archway and that "the bed was mussed up quite a bit in the middle of the bed." He testifies that his father had made the bed that day before going to the commissary.

In State v. Sells, 145 Iowa 675, 681, 124 N. W. 776, 778, considering the same subject-matter of corroboration, we had the following to say concerning the manner of weighing the evidence on that question:

"The probative force and effect of a given fact or circumstance depends very largely upon its setting and that, which under some conditions would carry with it the effect of conclusiveness of guilt, may under other conditions be wholly without weight or significance in that direction. For instance, while opportunity alone is in no case sufficient corroboration yet opportunity is a material fact, and it may cut a vastly greater figure in some cases than in others. For instance, if it were claimed that defendant assaulted the prosecuting witness in her own home or in some other place where he had no legitimate errand, proof that at or near the time in question he was seen to enter the room or place where the alleged offense occurred, and that later he made ambiguous or misleading statements con-

cerning his conduct, would reasonably justify a finding of his complicity in the crime. On the other hand, if, as in the case at bar, the offense is charged to have been committed in his own home or office where he had an undoubted right to be and in a room or place where he was accustomed to meet visitors or transact business with patrons, upon one of whom the assault is said to have been made, no possible sinister significance can be given to the mere fact of his presence there, and the corroboration which will satisfy the requirement of the law in such a case ought to be more direct and satisfactory than would be held sufficient were he a trespasser or an intruder.''

In the case at bar, the coming of defendant to, and his presence in the Scofield home, in the light of the circumstances above pointed out, cannot fairly be said to have in it anything sinister or suggestive of ill intent. From defendant's message over the 'phone, that he would come and take Scofield to the commissary, the only fair inference is, that defendant did not anticipate a situation in which he would be in the home alone with Julia, and his finding her alone with Junior was not a situation of his creation, but happened because Scofield failed to wait and had departed only a few moments before defendant's arrival. The defendant's interest in gaining information with respect to his mother's illness, as well as his offer to come and take Scofield to the commissary, would seem to make his presence in the Scofield home a natural and normal thing. There remains then whether after his arrival the defendant created an opportunity to commit the alleged offense. The state's proof on that proposition seems to consist in the evidence of the suggestion alleged to have been made by defendant to Junior that Scofield did not allow these children, then including three neighbor children, to play in the house, and the evidence of the presenting of the pennies, and the evidence of the little girl, Dolores, that defendant suggested she go with Junior and buy gum, and the evidence of Junior as to the condition of the bed when he returned, and found defendant and Julia in the room, Julia sitting on the bed, defendant standing in the archway. The state claims that by these suggestions and acts defendant created an opportunity by which he could commit the alleged offense and that therein there is sufficient corroboration that he committed the offense some time between the departure of Julia

and all of the children and the alleged return of Junior. It is difficult in reviewing this situation to say at what point the duty of the court ends and merges into the exclusive province of the jury. The reason why the law requires corroborative evidence is sound, and we have stated that the rule is salutary because it is easy to charge but difficult to disprove offenses of such character. On account of the latter statement being so true, we cannot but take into consideration that in this case the only corroborative evidence, that is essential to establish that defendant is the one guilty of the alleged offense, is that of a child twelve years old, brother of prosecuting witness, and that of another child of but eight years. In considering the weight of the testimony of the latter witness, we have the same hesitancy and doubt that was expressed by this court in Kilburn v. Mullen, 22 Iowa 498. In that case the court, speaking through Dillon, J., with reference to the alleged error of the lower court in refusing to allow to be sworn as a witness a child about eight and one-half years old, used this expression: ''We are not satisfied that the court made no further inquiry of the little girl, than the one concerning her age. Being considerably less than nine years of age, the presumption in favor of capacity to understand the obligation of an oath would, at most, not be very strong.'' It is to be noticed that in the case at bar this eight year old witness was the only witness who testified to any suggestion of defendant as to the child and Junior going away from the home to purchase gum, and it is also to be noted in her testimony above quoted that she related the transaction as one that happened when defendant came to the Scofield home, the defendant saying, ''Hello,'' and proceeding with the transaction of the pennies, whereas it is the claim of the state and the undoubted fact that this little girl was not present when defendant arrived and the transaction could not have happened when and as related by her. The testimony of Junior Scofield as to the gift of the pennies is free from any suggestion of defendant that he take the pennies and leave the house for making some purchase and the transaction has more of a normal and innocent act than one indicating bad motive, because the state's evidence is full of instances where the defendant, apparently out of a feeling of good will toward all members of the Scofield family, had many times made small donations to various members of the family, especially the children, for small expendi-

tures and insignificant purposes. As to the children not being allowed to play in the house, the state makes no attempt to show that this was not a rule imposed by Scofield, called to Junior's attention by defendant. But there is the further evidence as to the condition of the bed, the evidence that Julia was sitting on the bed, that defendant was standing in the archway, and that no other persons were present. True, the commission of the offense itself can be established solely by the testimony of the person claiming to have been assaulted. But there is applicable to the case before us the rule laid down in State v. Sells, 145 Iowa 675, 682, 124 N. W. 776, 778, that:

"* * * if the story of the prosecutrix be in all respects clear, consistent, and natural, and convincing to the unprejudiced mind, if it has the 'ring of truth', corroboration might be held sufficient which would not be sufficient where her testimony is neither clear, consistent, convincing, or natural." In that case we also said, "We are not unaware that this discussion leads us close to the border line beyond which all these considerations must be left to the jury, but the court sits to see justice done to the accused as well as to the state, and if the corpus delicti though having some support in the evidence is dependent on proof of glaringly doubtful and uncertain character and is supported by corroboration of such weakness and inconclusiveness that a conviction thereon shocks the conscience and makes it reasonably apparent that there has been a failure of justice, a new trial should be ordered."

Mental reservations as to the clear, consistent, and convincing character of the testimony of the prosecuting witness, whose evidence the state seeks to corroborate, results from a careful reading of her testimony. She testified before the grand jury that on an earlier date defendant had intercourse with her at a place described by her as being a point on the river. In later testimony on the trial of this case, she said that was all a big mistake, that she did not mean it at all. What impresses one is not merely that there was contradiction in her testimony, but it is the nature of the subject-matter of her testimony as to which she changed her statements. The subject-matter was whether at a point on the river she had intercourse with the defendant. If there was ever a subject-matter on which a young girl witness could not be honestly mistaken, here is such a one. Regrettably,

the prosecuting witness had been deprived, without fault of hers, of some of those better associations that should be a part of a young girl's life. It is in the evidence that her parents in making a livelihood at times traveled about the country engaging in various employment and occupations at street carnivals and county fairs, taking along with them the prosecuting witness, their itinerary including parts of Minnesota, Iowa, and Missouri. It is the testimony that the prosecuting witness operated at these places some sort of a game of chance, called a "hoopla joint", and was more or less in contact with those engaged in the concessions at these carnivals and county fairs.

A consideration of the evidence offered on the part of the defendant tends, of course, to throw further controversy into the question of the light in which to view the corroborating testimony. But we have not referred thereto in the foregoing except as the defendant's evidence accorded with that of the state. Confining our consideration solely to the state's evidence, we are constrained to say that the record is such that the corroboration contemplated by the statute should have been established by evidence in its nature more substantial than that offered by the state. The corroborative evidence offered is inferential in character. Aside from the testimony of the witness Junior Scofield, as to the condition of the bed, and the presence of defendant and Julia alone, it is difficult to find therefrom any reasonable deduction of bad motive to create an opportunity to commit the offense. The evidence of the witness, Junior, just referred to has for its substance the condition of the bed and the presence of defendant and the prosecuting witness. Associated with these matters of testimony of Junior is the fact admitted by the state that during all of the period during which the offense could have been committed by defendant there were children playing downstairs, who had but recently left the Scofield rooms and whose reappearance at any moment was to be anticipated. The testimony of Junior that the bed was mussed up in the middle is devoid of any showing as to the extent or particulars of the alleged disarranged condition of a bed that witness says was then being used by Julia. The use by Julia necessarily resulted in some disarrangement and her contribution to the disarrangement is not shown. It all leaves the testimony of Junior where conclusions are more conjectural, than fair and reasonable inferences. We are not satisfied that the intention of the Legislature

in requiring corroboration in such offenses has been met by the testimony in this case. For that reason, the case is reversed.—Reversed.

KINTZINGER, C. J., and ALBERT, POWERS, DONEGAN, MITCHELL, HAMILTON, and PARSONS, JJ., concur.