STATE OF IOWA, Appellee, v. JOHN TEAGER, Appellant.

No. 43467.

392

October 20, 1936.

Edward L. O'Connor, Attorney General, Walter F. Maley, First Asst. Attorney General, and William M. Tatum, County Attorney, for appellee.

Robertson & Robertson and Walter I. Wolfe, for appellant.

HAMILTON, J.—The defendant was charged with the commission of the crime of assault with intent to commit rape. The prosecuting witness was Agnes Clark, a child 12 years of age. The prosecuting witness, accompanied by her 14 year old sister, Leota, and her aunt, on the evening of July 18, 1935, went from her home some blocks away to the city park in the town of Logan, Iowa, in which town the parties live. It appears that the town was putting on what is termed a ''jubilee'' day, and a carnival company was setting up its concessions, among which was a ferris wheel, in the city park. They left home about 7:30 o'clock. The defendant, a man 60 years of age, a common laborer, was also in the park with his wife and three grandchildren. About ten o'clock Leota and Agnes Clark started home. Leota stopped on the way at one of the stands and Agnes went on toward her home, for the alleged purpose of getting some money to ride on the ferris wheel. She states that as she was going down the sidewalk she saw the defendant going toward his home; that he took hold of her and compelled her to go along with him; that she finally broke away from him and ran some distance ahead of him, passing up through the yard or lawn of Mr. and Mrs. Martin Teager, a brother of defendant; that the defendant did not run after her but he walked rather fast and finally overtook her near the toilet of one of the neighbors. From there she says he compelled her to go to his home where the offense is alleged to have been committed. There was a trial to the jury and a verdict of guilty. The usual motions were filed and overruled and the defendant has appealed.

Appellant's first assignment of error is based on his claim that the record fails to show any corroborating evidence connecting the defendant with the commission of the offense. Section 13900 of the Code provides:

''The defendant in a prosecution for rape, or assault with intent to commit rape * * * cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense.''

In connection with this rule of law, this court has repeatedly held that the fact that defendant had opportunity to com-

mit the crime does not constitute the corroboration required by the statute. It has been held, however, that if the evidence shows that the defendant deliberately created the opportunity for the specific purpose of committing the wrongful act, this would constitute sufficient corroboration to take the case to the jury. State v. Kessler, 189 Iowa 567, 178 N. W. 513; State v. Landes, 220 Iowa 201, 262 N. W. 105; State v. Whitney, 220 Iowa 1203, 263 N. W. 803; State v. John, 188 Iowa 494, 176 N. W. 280.

As to whether there is any evidence of corroboration is a question for the court, but if such evidence be found, the sufficiency or weight thereof is ordinarily for the jury. State v. Crouch, 130 Iowa 478, 107 N. W. 173; State v. Bricker, 135 Iowa 343, 112 N. W. 645. The rule is stated in State v. Greiner, 203 Iowa 248, 212 N. W. 465, in the following language:

"It is the rule in this state that if there is any testimony independent of that of the prosecuting witness, tending to single out and designate the defendant as the guilty one, its sufficiency is a question of fact for the jury."

It is also well established by the decisions of this court that the fact that the crime of assault with intent to commit rape was committed by someone may be established by the testimony of the prosecuting witness alone. State v. Greiner, supra. Therefore, if the jury believed the prosecutrix, as it had a right to do, the fact that the crime of assault as charged in the indictment was committed by someone is sufficiently established by her testimony alone. State v. Crouch, supra.

■■■ In this case it is strenuously contended by appellant that the record fails to show any fact or circumstance pointing out or connecting the defendant with the commission of the offense. In considering this point the record before us is not without difficulty, and presents a situation requiring very serious and careful consideration. Aside from this little 12-year-old girl's statement on the witness stand, there isn't a scintilla of evidence that she was ever assaulted by anyone. There is no evidence that the defendant deliberately created an opportunity to commit the offense. According to the testimony, five or ten minutes before it is alleged this assault occurred in the home of the defendant, he was with his family at the park. He asked his wife if she was ready to go home and she told him that she and the

grandchildren would be down in a little bit. She testified that her husband said he was going home and in about five minutes she and the children started home also. It was then about 10 or 10:30 p. m. He might therefore reasonably expect his wife and the children home at any moment. She testified that she thought nothing of it when she got home and saw the Clark girl in the house, that she had been there time and time again. The Teager family and the Clark family live across the alley from each other. They were close neighbors and must have sustained rather intimate relations. This is shown by the undisputed evidence in the record. The prosecuting witness told Mr. and Mrs. Martin Teager, who live in the same neighborhood, that she was going up to John Teager's, the defendant's, to borrow some money. She doesn't deny making this statement, and in her direct testimony she states her purpose in leaving the park was to go home to get some money to ride on the ferris wheel. The defendant was in his own home where he had a right to be. There is nothing strange or unusual or unnatural about his getting tired of standing around in the park and starting for home a few minutes ahead of the rest of the family. There isn't a word of evidence, aside from that of the prosecuting witness, that she appeared frightened or the least excited, and there is no evidence at all of any marks or bruises upon her person or that her clothing was disarranged in any way whatsoever, or that the bedclothing was in any way mussed or disarranged. Evidence of corroboration must be found in the following facts and circumstances:

The prosecutrix testified that when she and the defendant got to the house he unlocked the porch door, and they went into the kitchen, through the living room into the bedroom, first locking the porch door; that he pushed her down on the bed and tried to get her bloomers down; that he couldn't do this and she pushed his hands away; then he tried to put his hand on her bloomer leg and she kicked at him; that there was no light in the house but the moon was shining through the window and she saw that his pants were open; that she saw him unbutton them. At this stage of the proceedings, Mrs. Teager appeared at the door and asked her husband to let her in and the girl says that the defendant said: "Wait till I get my pants on." About this time the son, Tom, appeared and after some difficulty, succeeded in unhooking the door, which was a wooden door, hooked from

the inside. The screen was not hooked. The mother preceded Tom into the house. Tom lit a lamp and saw the defendant standing by the stove in the kitchen, some 15 or 20 feet from the bedroom. On direct examination Tom testified that his father was standing still when he first saw him by the stove and he had hold of the front of his overalls, fixing the waist and the buttons. On cross examination Tom said: ''When I first saw father in the house, I don't know whether he had his hands in his pockets or not. I couldn't just say.'' The prosecutrix said that when Mrs. Teager appeared upon the scene the defendant pulled her shoes off and told her to get under the bed. The son, Tom, testified that he was first attracted to the bedroom by hearing a noise, that he took his flashlight and went in and the girl came out from under the bed in her stocking feet. Mrs. Teager said she didn't see where the girl came from, but when she first saw her she was in the kitchen with her shoes on. Defendant made no explanation as to why the room was dark or as to why the door was hooked from the inside. He was there alone in his house, the little girl was under the bed with her shoes off when his son and wife came. He did not unhook the door and let them in, but for some unexplained reason they were required to manage by means of a wire to raise the latch and unhook the door from the outside. When they came into the house he very shortly thereafter walked out, and a few moments later, when Tom and his mother and the prosecutrix went out, he was lying on a sort of hammock. He was asked by Mrs. Teager what the girl wanted, or what he had her there for—there is some dispute as to the exact language the mother used. The defendant at first said nothing and then denied having made any attack upon the prosecutrix. The record is a little blurred at this point. The mother testified that Tom asked her husband what the girl was doing there, but Tom and the girl say that the mother asked the question. The defendant says that Tom asked him what he had been doing to this girl and he told Tom ''nothing'', and that Tom asked the girl if he had ''been funny'' with her and she said ''no''. The record is not clear as to just what Tom said in response to this—the girl says he used some bad language—but they all agree that the defendant and his son, Tom, got into a fight. After the fight the defendant walked away. Mrs. Teager says that the girl first said that the defendant assaulted her, and then said that he didn't. The prosecutrix on cross-examination

testified that the defendant denied in her presence to Tom and Mrs. Teager having anything to do with her, and also admitted on cross-examination that when the defendant made this denial she said nothing. The defendant went away, over to Missouri Valley, to inquire about some work. He said he remained there until he was arrested. On the witness stand he said that he knew nothing about the charge against him until he was arrested. There was evidence that the son, Tom, and his father had had trouble before, one or two fights, and that there was bad blood between them. The son, Tom, in his testimony claimed that they had become reconciled at the time this incident occurred. It seems that the son's wife was sick in the hospital and he and his three minor children were living in the home with the defendant at this time, and he had been working in the country, plowing corn, and came home that night about 9 :30 or 10 o'clock and found his mother at the door, waiting to get in the house.

Under this state of the record as just related, we are satisfied that the question of corroboration was for the jury, and that if the jury believed—as it had a right to do—the testimony of the prosecuting witness, that she had in fact been assaulted, the facts and circumstances would point to the defendant, and to no one else as the perpetrator of the offense. The responsibility rested upon the jury to weigh the testimony. The jury had the advantage of being confronted with the witnesses, with an opportunity to observe their demeanor and candor, or the lack of it, and were in a much better position to judge and pass upon the weight and credibility of the testimony than are we, with nothing but the cold, naked, printed testimony before us.

■■■ The appellant lays great stress upon an alleged error committed by the court in ruling upon the admission of certain testimony tending to impeach the prosecuting witness, Agnes Clark. The defendant placed upon the witness stand, as a witness for the defendant, Grace Peet, a teacher in the Logan school, who testified that she taught the third grade, and that Agnes Clark was one of her pupils during the last school year. After being interrogated concerning her observations of the prosecuting witness while in school, as to her mentality, her reliability and dependability, which the court correctly refused to permit the witness to relate, this witness was then asked the following question: "Do you know what her general reputation is in the community where she lives as to truth and veracity?"

to which the prosecuting attorney made the following objection: "We object to that as already having the required number of character witnesses, and also the truth and veracity not in question in this case. The Court: I will sustain the objection." This ruling was clearly erroneous. No other witness had been used for impeachment of this witness. It has been the prevailing rule in this country and under the English common law from time immemorial to permit impeachment of any witness in a civil or criminal case by this method. In many states, including our own, the credibility of a witness may be attacked by showing the general bad moral character of the witness. Code section 11271. But this statutory method of attacking the credibility of a witness does not in any way limit or change the long established rule that the general bad reputation of a witness for truth and veracity in a community in which he lives or in which he has recently resided may be shown for impeaching purposes. Hunt v. Railway Company, 160 Iowa 722, 141 N. W. 334.

■■■ It is argued by the state that this inquiry must be limited to a time at or near the time of the commission of the offense. Counsel for appellee had in mind the wrong principle. That rule has no application to such an inquiry as was propounded to this witness. It is the present time when the witness is being examined to which the impeaching question relates, and not to some prior date.

In connection with the court's ruling, appellant's counsel made the following record: "Mr. Robertson: If the Court please, we have a right to show that any witness that testifies here,—we have a right to show that truth and veracity. The Court: The Court has ruled on that. Exception by the defendant. Mr. Robertson: We offer to show by this witness who is now on the witness stand that she will testify that the general reputation of the prosecution witness, Agnes Clark, in the community where she resides— Mr. Tatum: We object to stating in the presence of this jury as to what the reputation of this girl will be. The Court: I will sustain that objection. Exception by defendant."

■ It will be noticed that counsel did not finish his offer because of the objection. The objection was rightly sustained, it being a matter in the discretion of the trial court as to whether the offer was proper to be made in the presence of the jury. Counsel for appellant continued with the following offers: "We

also offer to show by this same witness, that this prosecuting witness, Agnes Clark, is now at least two years behind in her school work; that she is well acquainted with this prosecuting witness, Agnes Clark, and that Agnes Clark is subnormal mentally.'' This was all objected to, and the objection rightly sustained by the court, and at this point the jury was excused. Counsel for appellant continued with his offer: ''Mr. Robertson: And ought to be in an institution for proper treatment and care at this time. And that we offer to show by this witness that Agnes Clark is wholly unreliable in her word and statements, and that she is one of peculiar and unusual character; that when she tells a falsity or takes a position on anything that she is very strong in sticking to that, and hard to change, unusually hard to change in any position she takes about any fact question, or mentally. That this witness now on the witness stand taught her in school in the third grade in Logan, Iowa, until some time in June, 1935, and was well acquainted with her, and observed her up until about the first of June, 1935.'' To all of this the prosecuting attorney objected as irrelevant, immaterial, incompetent, and having no bearing on the issues in the case, which objection was sustained by the court.

[■■] Under this offer, does it appear that the defendant has been prejudiced by the error of the court in refusing to permit the witness to answer the question propounded? Section 11548 of the Code provides that no exception shall be regarded in the Supreme Court unless the ruling has been on a material point and the effect thereof is prejudicial to the rights of the parties excepting.

It does not appear in the record what the answer of this witness might have been to this question. Counsel for appellant started to make his proffer of proof, but before he completed the same was stopped by objection on the part of counsel for appellee, and this unfinished proffer of proof was never repeated or completed, so that we are not apprised whether the witness would have answered ''yes'' or ''no'' to the question, and there is no showing that she would have testified that she was acquainted with the general reputation of the witness, Agnes Clark, for truth and veracity in the neighborhood where she lived, or that she would have testified that such reputation was bad. The rule in this state seems to be that unless it is apparent on the face of the question asked the witness what the evidence

sought to be introduced is, that it is competent, relevant and material to the issues and offered under such circumstances that the court can plainly see that the admission of it would be helpful to the cause of the party offering it, that in the absence of a proffer of proof, prejudice will not be presumed. American Express Company v. Des Moines Nat. Bank, 177 Iowa 478, 152 N. W. 625; Yocum v. Husted, 185 Iowa 119, 167 N. W. 663. In re Estate of Johnson, 210 Iowa 891, at page 898, 232 N. W. 282, 286, this court said:

"The record fails to show, either by the form of the question propounded or by offer of testimony or otherwise, what the answers to the interrogatories propounded would have been. It has been the repeated pronouncement of this court that, in such a situation, no prejudicial error is shown. See Anderson v. Fort Dodge, D. M. & S. R. Co., 208 Iowa 369, 226 N. W. 151; First State Bank of Riverside v. Tobin, 204 Iowa 456, 215 N. W. 767; Schooley v. Efnor, 202 Iowa 141, 209 N. W. 408; Arnold v. Fort Dodge, Des M. & So. R. Co., 186 Iowa 538, 173 N. W. 252; Arnold v. Livingstone, 155 Iowa 601, 134 N. W. 101; Reynolds & Heitsman v. Henry, 193 Iowa 164, 185 N. W. 67; Bomgren v. Hanish, 194 Iowa 1117, 191 N. W. 79."

See also McGuire v. Interurban R. Co., 199 Iowa 203, at page 213, 200 N. W. 55.

In the instant case, however, it does appear of record from the colloquy between counsel and the court that the defendant's counsel was seeking to impeach the prosecuting witness, and he was demanding the right to impeach the credibility of this witness in a way and manner provided by law. This he was not permitted to do. The witness was not even permitted to answer the question "yes" or "no" and appellant's offer contained this language: "We offer to show by this witness that Agnes Clark is wholly unreliable in her word and statements." Are we justified in saying, under this question, and this offer, that no prejudice appears in the record by reason of the court's error in refusing to permit the witness to answer the question? In a case of this character where the fact that a grave offense has been committed depends entirely upon the truth of the statement of this little girl of tender years, concerning whose capacity as a witness there is no showing whatever, any competent proof affecting her credibility is of vital importance to this defendant.

The defendant said he was prepared to show by Grace Peet, 26-year-old school teacher, that the prosecuting witness was "wholly unreliable in her word and statements." One method provided by law for showing that she was unreliable as to her word and statements was by showing that her general reputation for truth and veracity in the neighborhood in which she resided was bad. The record discloses that Grace Peet was Agnes Clark's teacher for one school year which had just ended in June, 1935. This case was tried on September 11, 1935. The child's teacher would undoubtedly be in a position to observe her trait of character as to truthfulness. Under this entire record, in a case of this character, we are not willing to say that the error of the court in sustaining the objection to this question was without prejudice. In the interest of justice, we think a new trial should be granted.

[ ■■ ] Appellant's counsel insists that he was entitled to make the showing of the other facts contained in his offer for the purpose of testing the credibility of the witness. The witness being a child 12 years of age, evidence touching her capacity to understand the obligation of an oath and her intelligence, had her capacity been challenged at the time she was offered as a witness, would no doubt be competent. Our statute provides that every human being of sufficient capacity to understand the obligation of an oath is a competent witness. Section 11254, Code of 1935. The competency of the witness is for the court and not the jury, and ordinarily should be determined by the court before the witness is sworn. State v. Alberts, 199 Iowa 815, 202 N. W. 519. When a child of tender years is offered as a witness and his competency is challenged, it is the duty of the court to examine into the question of his competency. This matter should be developed and determined before receiving the testimony. State v. King, 117 Iowa 484, 91 N. W. 768, 769, and State v. Yates, 181 Iowa 539, 164 N. W. 798, 799. This court said in the case of State v. King, supra:

"When a child under 14 years of age is called as a witness, a preliminary inquiry should be directed solely to ascertaining whether sufficient capacity is possessed to understand the obligation of an oath. Above that age every person is presumed, until the contrary appears, to have common discretion and understanding. No presumption prevails in favor of the com-

petency of one under 14 years of age. * * * Intelligence, then, and not belief, nor the power of moral perception, is the test.''

And in the case of State v. Yates, supra, the court said:

''In these modern times, the courts are holding that, while there is no presumption in favor of competency, there is no presumption against competency; that the competency of a child depends upon his intelligence and capacity for understanding. * * * There is no age limit placed in the statute. Competency is, therefore, a fact to be determined at the time the child is offered as a witness, and the test is whether the child has sufficient capacity, in fact, to understand the obligation of an oath at the time he is offered.''

The record in this case fails to disclose that the competency of this witness was in any way challenged or that this matter was raised by anyone. Had the capacity of the witness been challenged and the witness had passed the examination by the court and been sworn, if the challenge went to the mental capacity of the witness, no doubt evidence of witnesses competent to give evidence as to such mental capacity might have been introduced and considered by the jury as bearing upon the degree of intelligence and understanding of the witness as affecting the credibility of such witness. State v. Alberts, supra. There was no error in refusing to permit the witness, Grace Peet, a school teacher, to give testimony concerning the specific matters contained in the offer.

Other matters urged by appellant will probably not arise on a new trial, and we deem it unnecessary to prolong this opinion with a discussion thereof. For the reasons stated, the motion for a new trial should have been granted. The cause is reversed.—Reversed.

PARSONS, C. J., and MITCHELL, RICHARDS, DONEGAN, KINTZINGER, and ANDERSON, JJ., concur.