**IN THE COURT OF APPEALS OF IOWA**

No. 14-0305
Filed November 26, 2014

**IN RE THE MARRIAGE OF VICKI M. VAN VELDHUIZEN**
**AND RANDY H. VAN VELDHUIZEN**

**Upon the Petition of**
**VICKI M. VAN VELDHUIZEN,**
        Petitioner-Appellee,

**And Concerning**
**RANDY H. VAN VELDHUIZEN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Lyon County, Patrick M. Carr,

Judge.

        Randy Van Veldhuizen appeals from the district court's ruling on Vicki Van

Veldhuizen's application to modify the parties' dissolution decree.  **AFFIRMED**

**AS MODIFIED, AND REMANDED.**

        Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West

Des Moines, for appellant.

        Missy J. Clabaugh of Jacobsma & Clabaugh, P.L.C., Sioux Center, for

appellee.

        Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Randy Van Veldhuizen appeals the district court's order modifying the dissolution of marriage decree between him and Vicki Van Veldhuizen. Randy's claims on appeal fault the district court for: (1) maintaining the parties' shared physical care of the parties' five minor children; (2) improperly calculating his child support obligation; (3) establishing a "common fund" provision for child-related expenses; and (4) awarding Vicki trial attorney fees. Vicki requests appellate attorney fees. We affirm as modified, and remand for recalculation of child support.

## I.    *Background Facts and Proceedings*

Randy and Vicki Van Veldhuizen divorced in 2011. Vicki is thirty-nine years old and Randy is forty-seven years old. Vicki became pregnant with the parties' oldest child when she was sixteen years old. Over the years, Randy and Vicki had seven more children, five of which are still minors.

In October 2011, the parties signed a nine-page "Stipulation and Agreement" which set forth the terms ending their marriage.[1] They agreed to joint legal custody of their minor children (at that time, six of the children were minors), with the physical care to alternate "on a week to week schedule, exchanging the children at 5:00 p.m. Sunday evening," and with Randy having the children every Sunday from 9:00 a.m. to 1:00 p.m. to take them to church.

Paragraph 9(f) of the stipulation provided that each party would be responsible for daycare, food, and clothing expenses when the children were in their respective care, and further stated:

---

[1] Vicki was unrepresented by counsel at the time the stipulation was entered.

> In lieu of paying child support, [Randy] shall be responsible for all of the children's expenses including allowance, school tuition, "field trips and lunches, extracurricular activities, vehicle insurance[,] and prom expenses. The parties further agree [Randy] shall be responsible for up to $12,000 per child to purchase a vehicle for each minor male, and to pay for wedding expenses for each minor female. The parties shall equally split any graduation expenses.

The stipulation set forth additional terms, including in part: Randy would maintain medical insurance for the children and would be responsible for any uncovered medical expenses; Randy would be entitled to claim all minor children as tax exemptions; Randy would receive sole ownership and responsibility of the family home, farmland, farm products, farm equipment, and other farm-related assets and liabilities; Randy would purchase a $185,000 home for Vicki; the parties would divide the marital household goods, personal property, and vehicles; Randy would pay Vicki a property settlement of $720,000 in monthly distributions of $4000.

The district court entered a three-page decree of dissolution incorporating the parties' stipulation. The decree included a finding that the parties' stipulation with regard to child expenses is "in compliance with the Guidelines and any variance is justified and appropriate as [Randy] will pay for the children's expenses as provided under paragraph 9(f) of the Stipulation and Agreement along with being responsible for their medical insurance coverage."

Less than one year after the dissolution decree was filed, Vicki filed a petition to modify the physical care arrangement for the parties' (now five) minor children. Vicki alleged a substantial and material change in circumstances had occurred, claiming Randy had "badmouthed" her to the children, interfered with and not supported the children's relationship and time with her, failed to share

information with her, "and in all other ways attempted to alienate the children from [her]." Vicki further alleged the parties' "lack of communication and lack of mutual respect does not support shared physical care and is detrimental to the children." Vicki claimed it was in the best interests of the children to be placed in her physical care "so that they have an open relationship with both parents without any interference and or badmouthing about the other parent as such conduct hinders their relationship with both parents." Vicki also requested a modification of child support, medical support, and dependency exemptions, and an award of attorney fees.

Randy filed an answer denying a change of circumstances, and stated if the court found there has been a material and substantial change of circumstances, then he should be awarded physical care of the minor children.

By the time of the modification hearing, both parties had changed their positions. At the direction of the district court, the parties completed a pretrial stipulation, which provided in part:

> Wife: Vicki believes it would be in the best interests of children that the parties continue with joint/shared physical care under which they currently operate with the exception of her Sundays no longer being interrupted and the children remaining in her care all day on the Sundays when the children are in her physical care. . . . If the court does not find it to be in the best interests of the children that joint/shared physical care continue to be exercised, Vicki would then propose that she be awarded primary physical care of the minor children with Randy being granted frequent, liberal and reasonable rights of visitation.
>
> Husband: Proposes primary physical care subject to wife's visitation.

The parties acknowledged the child support and visitation issues were dependent on the court's ruling with regard to physical care.

Trial took place over two days in August 2013. The court heard testimony from Randy and Vicki, their two adult sons, their sixteen-year-old son, a Lyon County deputy sheriff, a school teacher, and a school counselor. The court also received a number of exhibits evidencing, in part, the communications between the parties, including tape recordings and transcriptions of some of their conversations.

In February 2014, the district court entered its order on Vicki's petition for modification.[2] The court found the provision relating to the children's expenses (paragraph 9(f) of the parties' original stipulation) had been "problematic" and conflicts had arisen about how to pay for certain expenses. The court boiled the conflicts down to Randy's coercive and retributive control over the payment of expenses. The court discussed several instances of troubling behavior by Randy, including: Randy's reimbursement of $4.84 to Vicki for a prescription expense, which he had the children deliver to her in pennies; Randy's conversation with the parties' oldest daughter in which he told her that because he was the one paying for her wedding, "he will decide who attends," and that Vicki could not; and Randy's threats to Vicki that her "life will be hell" because he is able to spend unlimited amounts of money to engage in litigation with her. The court found:

> The present situation is clear to the Court. [Randy] is using the
> existing shared care arrangement and his control over the payment

---

[2] Meanwhile, a contempt proceeding was initiated by Vicki, alleging several instances of contemptuous behavior by Randy, including his failure to return the children to Vicki pursuant to the terms of their physical care arrangement. The district court denied Vicki's request to reopen the record in the modification proceeding with regard to the contempt proceeding, stating, "[T]he evidence proposed to be entered into the record would be cumulative of evidence already in the record."

of expenses for the children, and the absence of child support, to inflict retribution on [Vicki]. The record is not clear about the source of the profound anger and resentment harbored by [Randy]. Having seen the parties testify in person, however, the Court is convinced that it is real and intractable. This anger leads [Randy] to pressure the children to choose between him and [Vicki]. The proposition that alliance with him will be rewarded financially is strongly implied.

Ultimately, the court maintained the shared care arrangement, stating:

[T]he Court is going to accept [Vicki's] request to retain the joint physical care arrangement. The Court does so despite misgivings about [Randy's] troubling behaviors. This is the least bad alternative. There is no perfect solution to the family discord evident in this record. A full award of physical care to [Vicki] would deprive the children of time with their father.[3]

The court struck paragraph 9(f) of the original stipulation that had been incorporated into the dissolution decree, and ordered Randy to pay child support to Vicki in the amount of $3062.47 per month.[4] The court also struck the provision with regard to Randy's physical care every Sunday morning, finding the provision was "unduly restrictive" and provided Randy with "too much coercive power, which he [was] inclined to use."[5] The court ordered the parties to establish a "joint bank account for the benefit of the children," to which they would each deposit $750 monthly. The court specifically delineated a number of expenses of the children, and ordered "either party, acting alone, [to] draw checks on the account" to pay for those expenses. Other findings and conclusions by the court will be set forth below as relevant.

Randy appeals.

---

[3] The court previously noted it had considered Vicki's testimony that the children wanted to spend time with each of their parents.
[4] For purposes of calculating child support, the court imputed an annual income of $15,000 to Vicki, and determined Randy's average annual income was $377,558.
[5] Randy does not appeal that issue.

## II. Standard of Review

This modification action was tried in equity, and review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Johnson*, 781 N.W.2d 553, 554 (Iowa 2010). Although we are not bound by the findings of the district court, we give them deference because the district court was present to listen to and observe the parties and witnesses and evaluate the parties as custodians.[6] *In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986); *In re Marriage of Cupples*, 531 N.W.2d 656, 657 (Iowa Ct. App. 1995); *see also* Iowa R. App. P. 6.904(3)(g). And, "[t]here is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). The court deciding the case

> is greatly helped in making a wise decision about the parties by listening to them and watching them in person. In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented.

*Id.* (internal quotation marks and citations omitted); *see also State v. Teager*, 269 N.W. 348, 351 (Iowa 1936) (noting the factfinder "had the advantage of being confronted with the witnesses, with an opportunity to observe their demeanor and candor, or the lack of it, and were in a much better position to judge and pass upon the weight and credibility of the testimony," unlike the reviewing appellate court "with nothing but the cold, naked, printed testimony before [it]"). A witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not

---

[6] "Credibility" in this context, we believe, goes beyond mere truthfulness; it encompasses a witness's motive, candor, bias, and prejudice.

reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this "nonverbal leakage." *See* Thomas Sannito & Peter J. McGovern, *Courtroom Psychology for Trial Lawyers* 1 (1985). Thus, the trial judge is in the best position to assess a witness's interest in the trial, their motive, candor, bias, and prejudice. *See Teager*, 269 N.W. at 351.

### III. Physical Care

Randy contends the parties' dissolution decree should be modified to place physical care of the parties' children with him. Once a physical care arrangement is established, the party seeking to modify it bears a heightened burden, and we will modify the arrangement only for the most cogent reasons. *See Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). If the parent seeking physical care has shown a substantial change in material circumstances, then we consider whether the party has also shown "an ability to minister more effectively to the children's well-being." *Id.*

In support of his contention that a substantial change in circumstances exists, Randy alleges Vicki mistreated the children and they preferred remaining in his care. This allegation was brought to the district court's attention at trial, and the court astutely noted Randy's position in the modification had "evolved

over time."[7]  On the issue, the court considered Randy's testimony, which was supported in part by the testimony of the parties' two adult sons and sixteen-year-old son, that Vicki was mean to the children, paddled them with a board, locked the food pantry, and made them prepare their own meals.

The court expressly stated it "attach[ed] little credibility to this evidence." The court explained, "These claims first came to light only as trial of this matter approached, long after the actual claimed events would have occurred.  The claimed behaviors were all known or knowable long before the parties' divorce." The court further stated although it did not "ignore" evidence that the parties' sixteen-year-old "refuses, at present, to see his mother," it determined the son's "opinion about his own primary care is not entitled to much weight"—likely in light of the court's misgivings with regard to Randy's credibility and influence over his children's testimony, as described above.

On that note, we reiterate the district court's finding that the testimony of the parties' sons supports an implication the sons believe an alliance with the father would be financially rewarding.  Needless to say, in light of the district court's express credibility findings, we give little—if any—weight to this evidence in determining what physical care arrangement will best serve the children's interests.

In our de novo review, we conclude Randy falls far short of proving either a substantial change in circumstances, or that he could provide superior care for

---

[7] Even in his appellate brief, Randy acknowledges, "Vicki was the party who primarily sought the modification . . . ."  One would think Randy would have brought his allegations to light during the dissolution proceedings, or at a minimum, that he would have proactively sought modification had these issues been a real or imminent threat to the children.

the children such that modification of the physical care arrangement is warranted. There are many aspects of Randy's behavior and testimony that are troubling to the court. Clearly this family has had some difficult adjustments, but we believe Randy's actions have caused the situation to be far more tumultuous for these children than it should be. In the simplest terms, the fact that Randy boasts that the children call the nanny "mom," and points to this portion of his testimony as a selling point for his claim on appeal makes his lack of support for Vicki's relationship with the children even more transparent. Any claim by Randy otherwise is not founded in the record. The majority of the problems between these parties and in turn, any stress relayed to the child, are caused by Randy. We affirm on this issue.

## IV. *Child Support*

Randy claims the district court incorrectly determined his child support obligation[8] by (1) "wrongly adding depreciation expenses" to his income, and (2) failing to include his $455 monthly payment for the children's health insurance on the child support worksheet. We address these issues in turn.

### 1. *Depreciation Expenses*

Randy claims the district court incorrectly calculated his income by "adding back" 6/7ths of his Section 179 depreciation. According to Randy, his correct average annual income (with none of the Section 179 depreciation added back in) is $162,289.25. Randy claims his child support obligation should be calculated using an income for him of $162,289.25 rather than $377,558.

---

[8] Randy does not challenge the court's modification of child support; rather, he takes issue with the amount of support ordered.

"The purpose of the child support guidelines is to provide for the best interests of the children after consideration of each parent's proportional income." *In re Marriage of McDermott*, 827 N.W.2d 671, 684 (Iowa 2013). In calculating child support, the court must first determine the parents' current monthly net income "from the most reliable evidence presented." *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999).

The child support guidelines define "net monthly income" as gross monthly income less specifically enumerated deductions. *See* Iowa Ct. R. 9.5. The guidelines do not specifically provide for a deduction for depreciation expenses, but the Iowa Supreme Court has determined "depreciation should not categorically either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, should depend on the particular circumstances of each case." *In re Marriage of Gaer*, 476 N.W.2d 324, 328 (Iowa 1991). As the court observed:

> Depreciation is a mere book figure which does not either reduce the actual dollar income of the defendant or involve an actual cash expenditure when taken. On the contrary, it represents additional cash available to the defendant by permitting substantial tax deductions and, ultimately, tax savings. The fact that the defendant may use some or all of the cash represented by depreciation to pay off principal indebtedness on the property is of no consequence since such payments, in effect, increase his net worth and estate by increasing his equity.

*Gaer*, 476 N.W.2d at 328 (quoting *Stoner v. Stoner*, 307 A.2d 146, 152 (Conn. 1972)).

In *Gaer*, the court examined, at length, the various approaches to depreciation employed throughout the country and concluded that Iowa courts may deviate from the guidelines and consider the effect of depreciation when

justice requires. *Id.* More specifically, the court recognized some allowance may be necessary to ensure the continued success of a business and a straight-line depreciation method may be employed when necessary. *Id.* at 329. The holding in *Gaer* was reaffirmed by our supreme court in *Knickerbocker*, 601 N.W.2d at 52, and *McDermott*, 827 N.W.2d at 685, where the court again allowed deductions under a straight-line depreciation method.

"There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *Gaer*, 476 N.W.2d at 326. In terms of whether depreciation should be allowed, however, the primary consideration is not the best interests of the business, but the best interests of the child. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 533-34 (Iowa 2006).

Randy operates a 500-head dairy operation, does row crop farming, raises cattle, and has some rental income. Randy submitted no financial affidavits in this action; rather, he provided tax returns for the years 2008-2011. In calculating Randy's average annual income, the district court summarized its analysis of the tax returns as follows:

> [Randy] reports gains, and some losses, on the sale of depreciated livestock and machinery on Schedule D and Form 4797. He reports his main farm income on Schedule F. He has some rental income shown on Schedule E. He takes very significant Section 179 elections to expense recovery property. The Court has prepared Exhibit A. Exhibit A converts the Section 179 expense deductions to a 7-year useful economic life and adds back in 6/7ths of the elected cost of depreciable property, including animals, placed in service. The Court has netted gains and losses on Schedule D and Form 4797. Exhibit A shows a four-year average, net, guideline income of $377,558 for [Randy].

We conclude it was proper for the district court to allow some depreciation under a straight line method of depreciation in order to do justice between the parties. *See Knickerbocker*, 601 N.W.2d at 52. Reasonable depreciation on farm machinery and other assets related to the farm and livestock business is an expense realistically necessary to maintain that business, and "such expenses should be considered in calculating Randy's income." *See id.* The child support guidelines "provide flexibility on the question whether to allow or disallow all or any part of depreciation as a deduction from gross income." *Gaer*, 476 N.W.2d at 326. We find no reason to disturb the district court's calculation of Randy's income in regard to this issue.

2.   *Health Insurance Premiums*

Randy also challenges the child support calculation, alleging the district court failed to include his $455 monthly payment for the children's health insurance on the child support worksheet. Randy testified he provides the children's health insurance, which costs ninety-one dollars per child per month. This testimony was unrefuted by Vicki.

Randy is correct that the cost of the children's health insurance premium should have been deducted as part of calculating his child support obligation. *See In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997). We remand to the district court for recalculation of Randy's child support obligation under the current guidelines while accounting for Randy's expense in providing health insurance for the children.

## V. Child-Related Expenses Fund

Randy takes issue with the district court's order requiring the parties to establish a joint bank account, into which they would each deposit $750 per month to use to pay for child-related expenses. Randy claims it is "inequitable for the district court to require [him] to pay child support and also contribute $750 to a fund for child-related expenses." At a minimum, Randy claims: "If the bank account remains in place, there should be provisions that if a party causes an overdraft on the account, that party shall be solely responsible for the overdraft charges and fees."

Vicki takes no issue with striking this provision of the court's ruling, noting she "has been greatly concerned with having to maintain this joint account with Randy and the likelihood that Randy will use this account to exercise further control over her and the children as well as to create more conflict."[9] Vicki reiterated this concern at oral argument. In light of the parties' agreement on this issue, and without considering whether such a requirement would be equitable or appropriate under these circumstances,[10] we reverse the court's order with regard to the child-related expense fund.

## VI. Trial Attorney Fees

Randy claims the district court abused its discretion in awarding Vicki $2500 toward her trial attorney fees. In support of his contention, Randy points

---

[9] The court delineated a number of expenses of the children, and ordered "either party, acting alone, [to] draw checks on the account" to pay for those expenses.

[10] "The child support guidelines take into account the reasonable costs of living, including educational expenses, for dependent children." *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 334 (Iowa Ct. App. 2005). "Expenses for clothes, school supplies and recreation activities are considered under the guidelines, and a separate support order covering such expenses is improper absent a finding that the guidelines amount would be unjust or inappropriate." *Id.*

to his monthly payments of $4000 to Vicki per the parties' cash settlement, and states although Vicki was the party "who primarily sought modification," she "dropped her key motivating point" in the modification—physical care—by the time of trial. Randy also construes Vicki's testimony at trial ("I don't feel I need to") to support his claim that Vicki knew she had the funds to pay her own attorney fees, but wanted him to pay them.

An award of trial attorney fees rests in the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Whether attorney fees should be awarded depends on the parties' respective abilities to pay, *see In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006), and fees awarded must be fair and reasonable, *see In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Here, we find the district court did not abuse its discretion in ordering Randy to pay a portion of Vicki's attorney fees. We affirm on this issue.

## VII.    *Appellate Attorney Fees*

Vicki seeks an award of $5413 in appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* After considering these factors, we award Vicki $5000 in appellate attorney fees.

### VIII.   Conclusion

Upon consideration of the issues raised on appeal, we affirm the district court's order on Vicki's petition for modification but for the provision relating to the child-related expenses fund, which we strike from the decree.  We remand to the district court for recalculation of Randy's child support obligation under the current guidelines while accounting for Randy's expense in providing health insurance for the children.  We conclude the court did not abuse its discretion in awarding Vicki trial attorney fees, and we award Vicki $5000 in appellate attorney fees.

Costs assessed to Randy.

**AFFIRMED AS MODIFIED, AND REMANDED.**